STATE, EX REL. JAMES A. CAWLEY, *v.* DAVID J. O'HEARN.

*Quo Warranto. Voter. Check-List.* R. L. ss. 71, 2644, 2656. *Parol Evidence. Naturalization.* R. L. chap. 74. *Civil Authority.*

1. While the vote of a person whose name is on the check-list, and who is a resident, cannot lawfully be rejected, yet the list is not conclusive that he is a legal voter.
2. In making a check-list of voters, the annual assessment list, which is completed, and the last one preceding the time of making the check-list, governs; thus, in making a voting list in April, 1886, the assessment list of 1885 should be used.
3. PAROL EVIDENCE—NATURALIZATION. Parol evidence is not admissible to prove that a foreigner has been naturalized, the question being whether he was a voter; a certified copy of the record is required.
4. BOARD OF CIVIL AUTHORITY. The statute requiring check-lists did not change the power of the board of civil authority.

QUO WARRANTO. Heard on petition, answer, replication, and testimony. It was claimed that fraudulent and illegal votes were cast for both parties.

*Butler & Maloney* and *J. D. Spellman*, for the relator.

*W. C. Dunton* and *Howe & Coolidge*, for the defendant.

The opinion of the court was delivered by

TAFT, J. This is a complaint under chap. 74 R. L., for a *quo warranto* upon the relation of James A. Cawley against David J. O'Hearn, for usurping the office of trustee in the seventh ward in the village of Rutland. The election from which the controversy arises was held on the 28th day of April, 1886. A plurality of votes only was required for

an election. The vote, as declared, stood as follows : O'Hearn, one hundred forty-two; Cawley, one hundred forty-one. O'Hearn was declared elected and received a certificate in due form. There were votes for one Holcomb, but the question depends upon which received the greater number of legal votes, O'Hearn or Cawley.

I. The qualification of voters in the village of Rutland is prescribed by sec. 5 of Act No. 204, of the Session Laws of 1882, which reads: "Persons who have resided in the village one year, and who are voters in town meeting, shall be voters in village meeting." A check-list of voters was used as required by R. L. s. 2656; and the defendant claims that the right to vote of every one whose name was upon the check-list cannot now be questioned; that the check-list is conclusive; that the right to vote is *res adjudicata.*

The law authorizing check-lists provides that no person whose name is not upon it shall vote, and the vote of no person whose name is upon it shall be rejected, if a resident of the town on the day when the election is held. R. L. s. 71. This law was enacted in the year 1866. Prior to that time all questions that arose touching the right of any person to vote at any town or freemen's meeting, were decided by the members of the board of civil authority, who were present at such meeting. They could not have been considered at any time prior to the meeting. While the towns were small and the voters few, there was no practical difficulty in the prompt disposition by the civil authority of all questions that might arise at any meeting respecting the qualifications of voters; but after voters became numerous, numbering, in some instances, one thousand and more, it became substantially impossible to transact the business during the day of election, and therefore the statute was passed requiring the civil authority to make a list of the qualified voters, and to meet on some day prior to the election and correct the same, and hear and determine questions as to the list of voters, and providing that no changes,

with the exception of adding the names of those who, subsequently to such meeting and before the election, attained their majority, should be made in the list upon election day. Before the check-list act was passed, the board of civil authority was required to be in attendance during the meeting; and no one, if challenged, could vote without its permission, and no one who had its permission could be deprived of the privilege.

The power of the board of civil authority was not changed by the act requiring check-lists; neither was the right of the voter. It added the duty on the part of the board to make a list of such as in their judgment were qualified voters, and impliedly at least, by requiring the name of every voter to be put upon the list, to pass upon the qualification of every voter instead of those only who were challenged. Under the old law, if a voter was challenged, he had to go before the civil authority, who determined his right to vote. The act requiring a check-list does not say that one whose name is on it is a legal voter, but he may vote at that election; nor that every one whose name is not thereon has no right to have it there; it says that for the purposes of voting upon that day, it is conclusive, and to give it the effect contended for by the defendant would be giving it a meaning not apparent from the words of the act itself, and not contemplated by the framers of the statute. The only authority cited by the defendant in support of this claim is *Hyde* v. *Brush*, 34 Conn. 454. The only question in that case was whether, under the statutes of Connecticut, the selectmen and town clerk could revise the check-list on election day. It was held that they could not; and the plaintiff, whose name was upon the list, and who, as we judge from the report of the case, was a qualified elector, had a right to vote, notwithstanding the vote of the board that he had not. The correction of the list, when his name was stricken from the list, was made by the board at a time when it could not legally act.

II. The above holding requires us to examine the questions presented by the evidence, the most important of which is, whether in making the check-list, the assessment of 1885 or that of 1886 should govern. As we have stated, all persons who were voters in town meeting could vote in the village meeting, in case they had resided in the village one year. The question of residence does not become material in case of any voter under consideration. As to who were voters in town meeting, R. L. s. 2644 requires them to have been male citizens, twenty-one years of age, whose lists had been taken at the annual assessment next preceding the meeting. The complainant contends that those whose lists had been taken for the assessment of 1886 were entitled to have their names inserted in the voting list, being in other respects qualified. The board of trustees of the village has no power to change the law, and its resolution in the matter was of no avail. We think the safer and better rule is to hold that the authority making a check-list should be governed by the assessment list which, at the time of making the check-list, is the last one preceding, which has been completed. The list of 1886 did not become complete until the 15th day of May in that year, and consequently should not have been used in making the check-list in question.

III. The only other legal question which it is necessary for us to pass upon, is, whether parol testimony was admissible to prove the naturalization of a foreigner. A certified copy of the record of the court in which one is naturalized is the legitimate evidence of the fact; parol testimony to prove naturalization is inadmissible.

We find no fact from the testimony which requires us to pass upon any other legal question. Many of the witnesses were apparently actuated by intense partisanship, and the testimony is so contradictory and so much of it hearsay, that we do not feel certain as to the facts which it tends to show; and among such facts is the one relating to the double ballot. The tellers disagree as to how they were found, and

the president only testifies as to what the tellers told him and the appearance of them afterwards.

Taking the result as counted, O'Hearn had 142 votes; conceded as illegal on the hearing, 8, which deducted, leaves him 134 votes.

There were counted for Cawley, 141 votes; conceded as illegal, 1. We find that those voting for him, who had no list in 1885, numbered 12; and who were not citizens, 2; in all 15, would give him 126, resulting in the defendant's election by a majority of eight.

The check-list was evidently important evidence; and we think the defendant responsible for its loss, and that costs should not be awarded. The writ is denied and the complaint dismissed.