STATE ex rel SAYLOR, et al, Appellants, v. WALT, Respondent, (PIER, et al Intervenors and Respondents.)

(278 N. W. 12.)

(File No. 8159. Opinion filed February 25, 1938.)

*Charles P. Warren,* of Huron, for Appellants.

*George E. Longstaff,* City Atty., and *I. A. Churchill,* both of Huron, for Respondent.

*Churchill & Benson,* of Huron, for Interveners.

SMITH, J. This is an appeal from a judgment which vacated and dismissed an alternative writ of prohibition. The proceeding was instituted to determine whether a resolution adopted by the governing body of the city of Huron was subject to referendum.

The facts were not in dispute. At the annual election in April, 1937, the following question was duly and legally submitted to, and approved by, the electors of that city: "Shall the City of Huron, Beadle County, South Dakota, issue its negotiable bonds in the amount of Two Hundred Thousand ($200,000) Dollars, bearing interest at the rate of not to exceed four percent (4%) per annum, payable semi-annually, such bonds shall mature on July first, in the amounts and years as follows: $1,000 in 1939 to 1944, both inclusive, $15,000 in 1945 to 1956, both inclusive, and $14,000 in 1957, for the purpose of providing for the cost of the construction of a fully equipped auditorium for the City of Huron, and the acquisition of land for a site upon which to construct the same, the total cost of site and auditorium to be Three Hundred and Sixty-three Thousand Six Hundred and Thirty-six ($363,636) Dollars?"

Thereafter the governing body negotiated with the federal government for a grant of additional funds to aid it in the construction of a fully equipped auditorium. In October, 1937, the government, communicating through the Federal Emergency Administraion of Public Works, in a single proposal offered to pur-

chase the above-described issue of bonds and to grant the city $163,636. This entire offer was made subject to the terms and conditions contained in PWA form No. 230. Thereupon the governing body of the city adopted the following resolution:

"Resolution

"A Resolution Accepting the Offer of The United States of America to the City of Huron to Aid by Way of a Loan and Grant in Financing the Construction of a Fully Equipped Auditorium for the City of Huron and the Acquisition of Land for a Site upon Which to Construct the Same.

"Be it Resolved by the Board of City Commissioners of the City of Huron:

"Section 1. That the offer of the United States of America to the City of Huron to aid by way of a Loan and Grant in financing the construction of a fully equipped auditorium for the City of Huron and the acquisition of land for a site upon which to construct the same, a copy of which offer reads as follows:

"Federal Emergency Administration of Public Works
"Washington, D. C.
"Dated Oct. 6, 1937
"Docket No. S. Dak. 1102-DS

"The City of Huron,
"Huron, Beadle County, South Dakota.

"I. Subject to the terms and Conditions (PWA Form No. 230) which are made a part hereof, the United States of America hereby offers to aid in financing the construction of an auditorium, including necessary equipment and the acquisition of necessary land therefor, (herein called the 'Project') by making a grant to the City of Huron (herein called the applicant) in the amount of 45 percent of the cost of the Project upon completion, as determined by the Federal Emergency Administrator of public works, but not to exceed, in any event, the sum of $163,636, and by purchasing, at the principal amount thereof plus accrued interest thereon, from the Applicant, obligations of the description set forth below (or such other description as shall be mutually satisfactory) in the aggregate principal amount of $200,000:

"(a) Obligor: The City of Huron;

"(b) Type: Negotiable, general obligation, serial coupon bond; .

"(c) Denomination: $1,000;

"(d) Date: July 1, 1937;

"(e) Interest rate and interest payment dates: Four percent per annum, payable semi-annually on January 1 and July 1.

"(f) Place of payment: At the office of the Treasurer of the City of Huron, South Dakota; or, at the option of the holder, at a bank or trust company within the Borough of Manhattan, City and State of New York.

"(g) Registration privileges: At the option of the holder as to principal only;

"(h) Maturities: Payable on July 1 in amounts and years as follows: $1,000 in 1939 to 1944, inclusive, $15,000 in 1945 to 1956, inclusive, and $14,000 in 1957;

"(i) Payable as to both principal and interest from ad valorem taxes which shall have been levied without limit as to rate upon all the taxable property within the territorial limits of the Applicant in such an amount as will pay the annual interest thereon and the principal of such bonds at the time they become due.

"2. By acceptance of this offer the Applicant covenants to begin work on the Project as early as possible but in no event later than ten weeks from the date of this offer and to complete such Project with all practicable dispatch, and in any event within 12 months from the commencement of construction.

"United States of America

"Federal Emergency Administrator of Public Works.

"By (Signed) E. W. Clark

"For the Administrator

be and the same is hereby in all respects accepted.

"Section 2. That said The City of Huron agrees to abide by all the terms and conditions relating to such Loan and Grant, a copy of which terms and conditions were annexed to the Government's offer and made a part hereof.

"Section 3. It is hereby covenanted that work on the project described in the offer will be commenced as early as possible but in no event later than 10 weeks from the date of this offer, and

to complete such Project with all practicable dispatch, and in any event within 12 months from the commencement of construction.

"Section 4. That the City Auditor be and he is hereby authorized and directed forthwith to send to the Federal Emergency Administration of Public Works three certified copies of the proceedings of this meeting had in connection with the adoption of such Resolution and such further documents or proofs in connection with the acceptance of said offer as may be requested by the Federal Emergency Administration of Public Works."

Within the time and in the manner provided by sections 6253-6266, Revised Code of 1919, amended Laws 1921, c. 300, dealing with referendum in municipalities, certain electors of the city filed their proper petition seeking to refer this resolution to the electors of the municipality for approval or rejection. Plaintiffs then instituted this proceeding against the city auditor, representing in their application to the court that said resolution was not subject to referendum. Certain electors who had had an active part in issuing the referendum petition, were permitted to intervene.

As a reason for prohibiting the election plaintiffs first assert: "* * * that the referendum statute has no application to an ordinance or resolution relating to municipal bond issues which has been properly passed by the city commission, for the reason that the authority of the city commission in such matters is granted by an advance referendum of the question of whether bonds shall be issued for public improvements or other municipal purposes, and that the provision for this advance referendum takes the question of bond issue out of the application of the above general referendum statute."

■■ If the resolution in question dealt solely with the disposition of the issue of bonds authorized by the voters of the spring election, authorities would offer support for a contention that the Legislature did not intend to set up a machinery through which the electors might reconsider at a referendum election that which they had previously approved at a bond election. 43 C. J. p. 585, § 951. However, we are convinced that the facts disclosed in this record do not confront us with that situation. Although the proposal or offer of the government and the resolu-

tion of acceptance by the governing body of the municipality purport to deal with the purchase and sale of the bonds authorized at the spring election (a matter clearly beyond the powers of that body for the obvious reason that a municipal corporation is required to sell such issues to the highest bidder after notice as provided by section 6417 of the Revised Code of 1919), they also include the proposition of additional financing by the government through a PWA grant, as well as the fact that the entire proposal was subject to the terms and conditions of PWA form No. 230. These terms and conditions are not before us in detail, but that they might possibly prove to be extremely burdensome and to involve serious practical and legal questions is disclosed by the findings of the learned trial court. It appears therefrom that they include: "* * * numerous terms and conditions concerning hours of labor, rates of pay, qualifications of employees, purchase of materials, contracts for engineering, supervision, labor and material, and in general gives the State Director of the Federal Emergency Administration of Public Works a supervision and control over all such items;* * *"

No discussion is required to demonstrate that the question which confronted the electorate at the spring election was a wholly different question than was before the governing body of the municipality as it considered the wisdom of accepting the October proposal of the government. Such being the case, no basis appears for the intervention of the courts to prohibit a referendum. The wisdom of the policy which permits the electorate to exercise the right of veto has been determined by the Legislature. The provisions of the statute are unambiguous, and their operation should not be limited through strained judicial construction. In view of the contentions made by counsel that which was said by this court in the case of State ex rel. Wagner v. Summers, 33 S. D. 40, 144 N. W. 730, 733, is applicable: "But respondent earnestly contends that there must be some limit to the character of the acts which may be referred to the electors of the city for their rejection or approval. If we are right in our conclusion that the only limitation of that kind upon the Legislature was to prevent it from authorizing the submission of measures that may be necessary for the immediate preservation of the public peace,

health, safety, etc., it seems clear that the Legislature in its wisdom must be left to prescribe what acts (not within the exception) may be referred, and that courts are without authority to declare limitations where none are prescribed by the Legislature. If other limitations are deemed wise or salutary, the Legislature alone can so declare. Whether the power of referendum may be abused or unwisely·exercised, to the embarrassment or injury of individuals or the public, is not left to the courts to determine. They can only declare the law as it is written in the statute. Where the ·Legislature has declared no limitations the courts are without power to write them in the law. We might concede all the ills forseen by respondent's able counsel, but yet the courts cannot remedy them. The Legislature alone can prescribe limitations."

■ Under a further contention plaintiffs direct our attention to the language of section 6253 of the Revised Code of 1919 as follows: "No ordinance or resolution passed by the governing body of any municipal corporation, except such as may be necessary for the immediate preservation of the public peace, health or safety, or support of the municipal government and its existing public institutions, shall go into effect until twenty days after the publication thereof," and assert that this resolution was necessary for the support of the municipal government and an existing public institution, namely, an auditorium. Under plaintiffs' theory, the auditorium as a public institution acquired existence when the proposition quoted supra was adopted at the spring election. We are soberly convinced that this contention does not merit discussion. We content ourselves with observing that no matter what the case may be with public institutions of a different character, a municipal auditorium is such an institution as may not exist or function without a physical plant, and that therefore an auditorium that has its being solely in an ordinance and the wishful thinking of a progressive citizenry is not an "existing public institution."

The judgment of the learned trial court is affirmed.

No costs to be taxed.

All the Judges concur.