EARL C. DENICORE *v.* CITY OF BURLINGTON ET AL.

(70 A2d 582)

November Term, 1949.

Present: SHERBURNE, C.J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.
Opinion filed January 3, 1950.

*Robert W. Larrow* for the defendants.

*George L. Agel* and *Clarke A. Gravel* for the plaintiff.

ADAMS, J. This is a bill in chancery brought by the plaintiff, a

citizen and taxpayer in the defendant city, against it and the other defendant, J. Edward Moran, as mayor thereof.

The material allegations of the bill are in substance, as follows: that at the annual city meeting held on March 2nd, 1948, it was lawfully voted to erect a sewerage disposal plant and issue bonds to pay for the same; that on June 14th, 1949, a special city meeting was held, pursuant to a petition therefor, to vote upon a rescission of the votes had at the annual meeting held on March 2nd, 1948; that at said meeting the voters refused to rescind the votes to erect the plant and issue bonds; that on June 17th and July 5th, 1949, petitions were filed with the mayor asking that another special city meeting be called to vote again upon a rescission of the votes had at the annual meeting of March 2nd, but before any meeting was called a sufficient number of persons who had signed the petitions requested that their names be struck therefrom so the names upon the petitions were reduced below the requisite number required for the calling of a special city meeting; that on October 7th, 1949, the Board of Aldermen, as the City Council, by proper resolution unanimously authorized the issuance of $650,000 sewerage disposal bonds pursuant to the vote of the meeting of March 2nd and the resolution was approved by the Mayor on October 8th, 1949; that on October 10th, 1949, a petition containing the requisite number of signatures was presented petitioning that a special city meeting be held for the purpose of voting upon a rescission of the votes had at the meeting of March 2nd; that notwithstanding the presentation of the petition the city proposes to issue and sell the bonds and the mayor has indicated he will refuse to call a special meeting as requested by such petition.

The plaintiff seeks to enjoin the city from issuing the bonds for the construction of the plant during the pendency of the petition for the special meeting and unless and until such meeting has been held and a vote of the legal voters had upon the questions contained in the petition. The bill further prays that the mayor be ordered and directed to call a special meeting in accordance with the petition.

Each of the defendants demurred to the bill upon the following grounds, in substance: (1) That the issuance of the bonds was duly authorized by the votes at the original meeting of March 2nd, 1948; (2) That section 25 of the city charter does not require the

calling upon petition of a special city meeting for the purpose of rescinding such votes; (3) That the matter of rescission has been submitted once to the voters and rejected; (4) That the issuance of the bonds had been voted by the city council when no petition was pending for a special city meeting to rescind the original vote. The demurrers were overruled, pro forma, by the Chancellor and the case is here upon exceptions of each defendant to such order.

This Court has held that the voters of a town have the right to rescind or reconsider a vote that has not been acted upon and still rests in mere resolution. *Stoddard* v. *Gilman,* 22 Vt 568, 573. That was a case of reconsideration of a vote to raise a certain sum of money by a tax and the court said:

> "Until something has been done under the vote, the town are alone interested in it and may alter their resolve at their own pleasure. If the town have not this power great inconvenience might arise. At the time of the voting a tax there might be the strongest necessity for the town to raise a sum of money; but before anything is done towards its collection, such necessity may wholly have passed by and the money be entirely needless to the town. Is it true, that they must proceed to collect the tax, whether needed or not?"

This right to rescind, unless contractual obligations had been incurred under the original vote, was again expressly recognized in *Cox* v. *Mt. Tabor,* 41 Vt 28.

In *Estey et al* v. *Starr et al,* 56 Vt 690, 694, this Court had before it the right of the town of Brattleboro to rescind a vote to subscribe to the capital stock of the Brattleboro and Bennington Railroad Co. In that case the town had passed a vote granting aid to the railroad company in the amount of $66,000.00; the vote named the commissioners who were to carry the vote into effect by subscribing to the stock and gave them authority to borrow the money on the credit of the town to pay for the stock. The commissioners were sworn and procured and attested the assent of the taxpayers as required by law. Before they had subscribed for the stock or borrowed the money the town rescinded its original vote. This Court held it had that right and speaking through Powers J. said:

"In the case at bar, no contract had been entered into by the commissioners with the railroad company. The town had authorized its agents to make a contract, but had revoked the authority before the agents had exercised it.

"No right of any third persons had been affected by the action of the town. The town in effect had merely resolved to contract for the stock of the railroad company. . . . But it is said, that the town is bound by the steps already taken and we are referred to sec. 2764, R. L. as authority for this position. That section reads, 'When a majority of the taxpayers of the town, both in number and amount of grand list, have thus assented to the vote, it shall be binding on the town.' What shall be binding on the town? Not the contract; not the obligation, but the vote; the resolution to make the contract. No further action on the part of the taxpayers as voters shall be requisite to empower the agents to act. This is the whole scope of this section." The court then cited and referred to the cases of Stoddard v. Gilman and Cox v. Mt. Tabor, supra and said "The doctrine of these cases commends itself to us as besound in principle."

The right to rescind where no vested rights have intervened has been upheld in *Hibbs* v. *Adams Township,* 110 Iowa 306, 81 NW 584, 48 LRA 535; *Kirchner* v. *Directors of School Twp.,* 141 Iowa, 43, 118 NW 51; *Christopher* v. *Robinson,* 164 Ky 262, 175 SW 387.

The defendants cite in support of their contention that when a vote has been taken there can be no recission the following statement from 44 CJ 1209:

"Where a proposition to issue bonds has been adopted by the voters, it cannot be resubmitted in the absence of statutory authority, but a statute authorizing successive submissions of the proposition is not invalid."

The only authority cited in support of the statement is *People*

*ex rel.* v. *Trustees of Bellport,* 119 Misc. 357, 196 NYS 459. In that case the bonds had already been issued. The decision was not upon that ground, however. If it is to be taken as authority for the statement that when a vote is once had there can be no re-submission, it is not in accord, as we have seen, with previous de-cisions of this Court.

They also rely upon McQuillan, Municipal Corporations, Sec. 2362, where it is stated "If the vote is in favor of the proposition submitted as incurring an indebtedness, it is final and conclu-sive. . . ." In all the cases cited in support of this statement no question of rescission was involved. The cases had to do with the validity of bonds issued. The statement must be read in connec-tion with the cases cited and the whole section. It does not support the defendants' position.

Do the provisions of section 25 of the Burlington City Charter take this right of rescission away from the voters and preclude them from having a special city meeting called upon their petition to vote upon rescission of the previous vote? Section 25, so far as material here, reads as follows:

> "Sec. 25. Special meetings of all the legal voters of said city shall be called by the mayor upon request by resolution of the board of aldermen or on petition of one hundred legal voters for any legal purpose beyond the jurisdiction of the city council. . . ."

The defendants say, in effect, that after the voters at the an-nual meeting on March 2nd, 1948, voted in favor of the erection of the sewerage disposal plant and authorized the city council to issue the bonds to pay therefor, the matter was then *within* and not *beyond* the jurisdiction of the city council. If this is so there is no right left in the voters upon their own petition to have a special city meeting called in order that they may vote upon re-scission of their previous vote or take any further action in regard to the matter. This right of rescission, which we have seen they have, is entirely nullified. The charter has taken it away and they are helpless to take any action on their own initiative.

The defendants' argument presupposes the fact that a special privilege or distinction is conferred upon the city council not en-joyed by their fellow citizens. It overlooks the fact that the power given the board is not to them as individuals but as representatives

of all the people of the city; that is to the council itself in its representative capacity. *Weil, Roth & Co.* v. *Newbern,* 126 Tenn 223, 146 SW 680, LRA 1915 A 1009. The authority to proceed is given to the council by the voters and they can take it away. The city council could not rescind the original vote. Rescission is a purpose *beyond* its jurisdiction, not *within* it. The members act only in their representative capacity. Assume that the vote had been to erect the plant on a certain location and it should have developed such location could not be procured without large expense and expensive litigation or that the site after careful investigation, because of physical conditions, was not suitable. Under the construction of the charter asked for by the defendants, the voters, in that situation or many others that might arise, making a change in the original vote or its rescission advisable, would have to depend upon the board of aldermen to "request by resolution" the mayor to call a special meeting. The voters would be powerless to take any action themselves. We do not adopt that construction.

Does the fact that rescission has been voted on once and rejected preclude its being resubmitted? The answer to this lies in the fact that a considerable number of states have statutes limiting the time in which questions of bonding may be resubmitted or in which a vote to bond may be questioned. From this it would seem that it is considered a matter for legislation. We have none in this state on the subject. It is common knowledge here that questions of bonding for public improvements have been resubmitted to the voters several times in an effort to get the required number of votes in favor of the proposition. In the absence of legislation, we see no legal reason why the converse cannot be done. In legislative bodies it is covered by rule.

The oral argument was advanced that public policy dictates that the matter of rescission of favorable votes should not be subject to repeated efforts, for thus a minority could continually harass and bother a majority from proceeding with its will and practically exercise a veto power. This was not a ground of the demurrer, but there is force in the argument. In the present controversy there have been four petitions, one resulted in a special meeting, two were vitiated by the withdrawal of signatures and the fourth is now pending and the subject of this litigation. We, therefore, give it consideration. Two cases have come to our attention where the same argument was used. What was said by the

court is so pertinent that we quote with approval from both of them.

In *State ex rel. Saylor et al* v. *Walt et al,* 66 SD 14, 278 NW 12, 15, a case that had to do with whether a resolution adopted by the governing body of the City of Huron was subject to a referendum vote the court said:

> "Whether the power of referendum may be abused or unwisely exercised to the embarrassment of individuals or the public is not left to the courts to determine. They can only declare the law as it is written in the statute. Where the legislature has declared no limitations the courts are without power to write them into the law. We might concede all the ills forseen by respondent's able counsel but, yet, the courts cannot remedy them. The legislature alone can prescribe limitations."

In *Independent School District No. 68 of Fairholt County et al* v. *Rosenow et al,* 185 Minn 261, 240 NW 649, 650, the court had before it the matter of rescission where the statute permitted a school district to "repeal and modify their proceedings from time to time." It was urged that the unlimited right to rescind or modify could result in abuse by the minority. In discussing that the court said:

> "Equally irrelevant is the possibility under our construction of the statute, that a disgruntled minority may conceivably proceed to unconscionable and bothersome lengths in calling elections to rescind previous proceedings. That argument but raises questions of practical expediency rather than of law. They are for the voters first and then, if predicted evils result, it is for the legislature to forestall them. After all there is no vested right to be protected until the going into effect of the proposed contract."

Does the fact that the city council voted to issue the bonds while no petition for a special meeting was pending preclude the right of the voters to have, upon petition, such a special meeting held to enable them to vote upon rescission? What we have previously said requires a negative answer to this question. The

voters have the unlimited right of rescission in the absence of legislation and where the rights of third parties have not vested or intervened. The city council are only the representatives of the voters. Its vote to issue the bonds did not vest any right in a third party. No contract to erect the plant or sell the bonds had been made. The voters could still rescind the vote to build the plant or issue the bonds. *Stoddard* v. *Gilman, supra; Cox* v. *Mt. Tabor, supra; Estey et al* v. *Starr et al, supra; Weil, Roth & Co.* v. *Newbern, supra; Independent School District* v. *Rosenow, supra.*

*Pro forma decree overruling the demurrer of each defendant affirmed and cause remanded.*