526 P.2d 773

The MEMBERS OF the BOARD OF EDUCATION OF the PEARCE UNION HIGH SCHOOL DISTRICT, aka Pearce Valley Union High School District # 22, Joe H. Hedges, Earl Mahoney, Floyd Thompson, John Fennessey and Jack Huff; the County of Cochise, a body politic, and the Cochise County Board of Supervisors, Sam S. Balich, John F. Glass and V. L. Thompson; Cochise County Superintendent of Schools, Mrs. Patricia Goren, Appellants,

v.

George W. LESLIE and Eva T. Leslie, husband and wife, and E. O. Williams and Lovelier L. Williams, husband and wife, Appellees.

No. 2 CA–CIV 1628.

Court of Appeals of Arizona, Division 2.

Sept. 26, 1974.

Rehearing Denied Oct. 30, 1974.

---

250

Richard J. Riley, Cochise County Atty., Bisbee, for appellants.

Bilby, Thompson, Shoenhair & Warnock, P. C., by Lawrence M. Hecker, Jr., Tucson, for appellees.

## OPINION

HOWARD, Judge.

Appellant school district is a union high school district composed of three separate and distinct common school districts, to-wit: Elfrida, Pearce and Ash Creek. The high school physical plant is located in the Elfrida common school district. In September of 1971 the qualified electors of the Pearce Union High School District approved, by a narrow margin in a bond election, the issuance of $300,000 in bonds, the proceeds of which were to be used for the improvements of the existing high school physical plant in Elfrida. This bond issue has not yet been sold because it has been involved in litigation for more than two years.

Pursuant to A.R.S. § 15–1302 fifteen (15) percent of the school electors in the Pearce Union High School District petitioned the board of trustees of the district to call an election and place before the qualified electors of the district the following questions:

"1. Whether that bond election held on September 10, 1971, which authorized the issuance and sale of general obligation bonds of the District, should be rescinded and the bonds issued thereby cancelled.

2. Whether the location of the Pearce Union High School should be changed from its present site in Elfrida, County of Cochise, State of Arizona, to a site located in Sunizona, County of Cochise, State of Arizona, as specified below.

3. Whether said District should purchase as the site for the new Union High School either a. parcel of land in the SE ¼ of the NE ¼, Section 10, T18S, R26E, comprising approximately thirty-two acres, or in the NW ¼ of the SW ¼ Section 11, T18S, R26E, comprising approximately forty acres; both sites are in Sunizona, County of Cochise, Arizona, approximately one mile east of the intersection of U.S. Highway 666 and State Road 181. The first site is located north of State Road 181, and the second site is located south of State Road 181.

4. Whether bonds of the District should be issued and sold in an aggregate amount not to exceed $800,000.00 for the purpose of raising money to be used in the purchase of one of the sites described above, and for the construction of a complete school plant, including athletic facilities on said site.

5. Whether the buildings, equipment and site of the current Union High School in Elfrida, County of Cochise, State of Arizona, should be sold and the proceeds therefrom used for the construction of the complete school plant discussed above, and for any other purpose associated with the construction of said new school plant."

When the board of trustees of the school district refused to call an election appellees filed a special action in the superior court asking that the trustees be mandated by the court to call said election. The trial court found in appellees' favor and ordered the trustees to call a special election and

present the five questions to the qualified school electors. This appeal followed.

Appellants present two questions for review:

"I

Did the Superior Court err when it found that once the appellant is presented with a petition signed by at least 15% of the school electors of a school district pursuant to A.R.S. § 15–1302, the appellant must call an election to consider whatever questions are contained in said petition?

II

Did the Superior Court err in its finding that the qualified school electors of a school district may rescind a bond issue previously approved at a prior bond election?"

We view the questions submitted as being indivisible and based upon the rescission of the September 10, 1971 bond election.[1] The pivotal question is whether the school electors may rescind a bond issue previously approved at a prior election. We hold that they may not.

The rule generally applicable is stated in 64 C.J.S. Municipal Corporations § 1929c (1950):

"The defeat of a proposition to issue bonds does not prevent a second submission of the proposition, whereas a proposition to issue bonds which has been adopted by the voters ordinarily cannot be resubmitted in the absence of statutory authority." [footnotes omitted].

See also, 15 E. McQuillin, The Law of Municipal Corporations, § 40.18, p. 288 (3rd Ed.1970). This rule has been expressly recognized in Goedde v. Community Unit School Dist. No. 7, 21 Ill.App.2d 79, 157 N.E.2d 266 (1959); Schmiedeskamp v. Board of Trustees of School Dist. No. 24, 128 Mont. 493, 278 P.2d 584 (1955); People ex rel. Osborn v. Board of Trustees, 119 Misc. 357, 196 N.Y.S. 459 (1922); Custer City v. Robinson, 79 S.D. 91, 108 N.W.2d 211 (1961); Orr v. Marrs, 47 S.W.2d 440 (Tex.Civ.App.1932). There are cases which, contrary to the general rule, hold that having the power to vote the issuance of the bond, the school electors have, by necessary implication, the right to rescind that vote, unless by so doing they interfere with vested rights. See, Annot., 79 A.L.R. 438 (1932) superseded by 68 A.L.R.2d 1042 (1959). We rejected this theory of implied power in Garrett v. Tubac-Amado School District No. 5, 9 Ariz.App. 331, 451 P.2d 909 (1969) and stated:

"To uphold the contention advanced is to lay down law that would permit a minority of the electors in any school district to periodically call up for a new vote a matter decided by a previous vote. There is no limitation suggested by the appellants as to how soon or how many times this might be done. Though in this case, the school district with which we are concerned is relatively sparsely populated, so that the expense of holding another election would not be great, and though the number of petitioning electors is a majority of all of the electors in this district, the rule of law that we are asked to adopt would apply to all school districts in the state, and to any petition filed under A.R.S. § 15–1302 by fifteen per cent or more of the electorate. Many of our school districts are heavily populated and the cost of elections is substantial. We believe it to be in the best interest of school districts generally that we follow what we conceive to be the majority law in holding that petitions such as this do not have the mandatory effect that would otherwise be the case if there had been no previous vote on a question which included the question now sought to be put to the electorate." 9 Ariz.App. at 335, 451 P.2d at 913.

---

1. Appellees in their answering brief have referred to the questions as "necessarily linked and interdependent."

The grant of powers given to the school electors in A.R.S. § 15–1302 contains no authority to repeal or rescind a previous affirmative vote.

The order of the trial court is reversed with directions to dismiss appellees' special action.

HATHAWAY, C. J., and KRUCKER, J., concur.