543 P.2d 775

The MEMBERS OF the BOARD OF EDU-CATION OF the PEARCE UNION HIGH SCHOOL DISTRICT, aka Pearce Valley Union High School District #22, Joe H. Hedges, Earl Mahoney, Floyd Thompson, John Fennessey and Jack Huff, the County of Cochise, a body politic, and the Cochise County Board of Supervisors, Sam S. Balich, John F. Glass and V. L. Thompson, Cochise County Superintendent of Schools, Mrs. Patricia Goren, Appellants,

v.

George W. LESLIE and Eva T. Leslie, husband and wife, and E. O. Williams and Lovelier L. Williams, husband and wife, Appellees.

No. 11814–PR.

Supreme Court of Arizona, In Banc.

Dec. 2, 1975.

**464**

————◆————

Richard J. Riley, Cochise County Atty., by James M. Kerley, Deputy County Atty., Bisbee, for appellants.

Bilby, Thompson, Shoenhair & Warnock, by Lawrence M. Hecker, Jr., Tucson, for appellees.

STRUCKMEYER, Vice Chief Justice.

Petitioners, George W. Leslie and Eva T. Leslie and others, brought this special action in the Superior Court of Cochise County against the Board of Education of the Pearce Union High School District to compel respondent Board to call an election. The Superior Court ordered the election. On appeal, the Court of Appeals reversed, and we accepted review. The opinion of the Court of Appeals, 22 Ariz. App. 249, 526 P.2d 773 (1974), is vacated. The judgment of the Superior Court is affirmed.

The Pearce Union High School District of Cochise County, Arizona maintains a high school at Elfrida, Arizona. On September 10, 1971, the qualified electors, at an election within the High School District, approved a $300,000 bond issue, the proceeds to be used for the improvement of the physical plant at the high school at Elfrida. Before the bonds could be sold and pursuant to A.R.S. § 15–1302, a minimum of 15% of the qualified electors of the High School District signed a petition which was submitted to the respondent Board of Education requesting that it call a special election to place before the electors the five questions contained in the petition. The Board of Education refused to call the election and the Superior Court ordered that the election be called.

The five questions for which the petitioners requested a special election were (1) whether the bonds issued pursuant to the September 10, 1971 election should be cancelled; (2) whether the District should change the location of its high school from Elfrida to Sunizona; (3) whether the District should purchase a new site for the high school at Sunizona; (4) whether bonds of the District should be issued in the aggregate amount not to exceed $800,000 for the purpose of purchasing a site and for construction of a school plant; (5) whether the buildings, equipment and site of the school at Elfrida should be sold and the proceeds used for the construction of the school at Sunizona, Arizona.

Two issues are presented for resolution: (1) whether the calling of an election on petition of 15% of the school electors is mandatory under A.R.S. § 15–1302, and (2) whether the school electors at such an election can rescind a previously approved but unsold school improvement bond issue.

A.R.S. § 15–1302 provides:

"A. The board of trustees of a school district *may*, and upon petition of fifteen per cent of the school electors as shown by the poll list at the last preceding annual school election *shall*, call an election for the following purposes:

1. To locate or change the location of schoolhouses.

2. To purchase or sell school sites or houses, or to build schoolhouses, * * *.

3. To decide whether the bonds of the district shall be issued and sold for the purpose of raising money for purchasing or leasing school lots, for building schoolhouses, * * *." (Emphasis supplied)

It is the School Board's position that A.R.S. § 15–1302 is directory and not mandatory and, therefore, an election need not be called.

The touchstone to the interpretation of a statute is to determine the intent of the Legislature in enacting the statute. That intent is first to be determined from the statute's language and if that language is plain and unambiguous leading to only one meaning, the court will follow that meaning. *Marquez v. Rapid Harvest Co.,* 89 Ariz. 62, 358 P.2d 168 (1960), for it is presumed that is what the Legislature intended.

The language of A.R.S. § 15–1302 is plain and unambiguous. The word "may" in the first clause of section "A" is permissive, giving the boards power to call an election without a petition from the electors. This is appropriately so, because a school board might decide that a school needed to be bought, sold, built, or a location changed, and that a bond issue was needed to finance such actions. But if 15% of the electors, rather than the board, decide the school should be bought, sold, built, or changed in location, or for the issuance of a bond issue to finance such, the board's discretion is terminated and supplanted by the decision of the school electors. Consequently, the ultimate control of certain aspects of the school affairs is vested in the school district electors. Had the Legislature desired otherwise, it would have continued to use the permissive word "may" in the second clause of section "A" rather than the mandatory word "shall", and provided: "The board of trustees . . . upon petition . . . may call an election." The difference in terminology within the same sentence clearly dictates a mandatory construction for the word "shall."

The legislative history of this statute reinforces our conclusion. From 1912, when originally enacted, until 1928, the statute read:

"The Board of Trustees of any school district may, whenever in their judgment .it is advisable, and *must,* upon petition of fifteen per cent of the school electors . . . call an election . . . ."

(Emphasis supplied) Laws 1912, Ch. 77, § 44.

After the revision of 1928, the statute read:

"The board of trustees of any school district may, and upon petition of fifteen per cent of the school electors, * * * *must* call an election . . . ." (Emphasis supplied) Revised Code 1928, § 1014.

At the time the statute was amended in 1954, a provision was added, subsequently repealed, which required voters to be real property taxpayers. The word "must" was changed to "shall." The change of the word "must" to "shall" did not alter the mandatory nature of the statute's language so unequivocally expressed in the original enactment.

Respondents' arguments are to the effect that if the word "shall" is not construed as "may," elections could be continuously called on the same issues and even in the instant case there could be inconsistent results if the electors did not vote consistently on all five questions. But where the language of a statute is plain or unambiguous and the meaning does not lead to an impossibility or an absurdity, courts must observe the natural import of the language used and are not free to extend the meaning though the result may be harsh, unjust or mistaken policy. *Earnst v. Collins,* 81 Ariz. 178, 302 P.2d 941 (1956). We are not disposed to construe this unambiguous statute to obtain an arguably better result. *Kilpatrick v. Superior Court,* 105 Ariz. 413, 466 P.2d 18 (1970).

The second matter with which we are concerned is addressed only to the first question in the petition which was submitted to the School Board; namely, whether the authorization to issue and sell bonds arising out of the September 10, 1971 election should be rescinded and the bonds cancelled.

As noted, control over the issuance of school bonds rests solely with the electors of the school districts. A.R.S. § 15–

1302A(3). The electors govern the activity of the district on this matter. In governing activities, those charged with responsibility may find that policies previously established are no longer desirable and should be changed. We think the principle applies to the rescission of the 1971 bond issue.

■ At this point in time, no bonds have been sold, no steps have been taken to implement the purpose of the authorized bonds, and no rights have vested in third parties. Since it is the electors who control the activities of the school district on the issuance of bonds, they are concerned and unless the law clearly requires otherwise they should not forever be committed to an action which may be inimical to the district's best interests. A majority of the electors may well conclude that a new school should be built rather than the old one improved. Even those who voted for the 1971 bond issue may now prefer to establish a new high school in a different location rather than incur obligations to upgrade the old one. Certainly an affirmative vote on the question proposing the sale of the present site of the high school directly affects the 1971 bond issue. The purpose of that bond issue was to provide funds for the improvement of the school's present site in Elfrida and that is the sole purpose for which funds generated from the bond issue can be used. *Barry v. School District No. 210*, 105 Ariz. 139, 460 P.2d 634 (1969). Approval of the proposed sale would render the 1971 bonds useless since there would be no school to improve and the funds could not be expended for any other purpose. We think the electors who have the power to render the sale of bonds useless should have the power to directly terminate their existence.

■ Respondent argues that financial chaos could result if the electors can rescind a previously approved bond issue, because if after the bonds are sold a voter rescission could take place, that possibility would make any bonds unsaleable. But we do not think that financial chaos is likely

to result, for we adhere to the view that no rescission can take place once rights have vested.

While it is to be acknowledged that there is authority contrary to our holding here, there is also authority to uphold the position which we feel is fundamentally sound. *See Denicore v. Burlington,* 116 Vt. 138, 70 A.2d 582 (1950); *State ex rel Saylor v. Walt,* 66 S.D. 14, 278 N.W. 12 (1938); *Noble v. Lincoln,* 158 Neb. 457, 63 N.W.2d 475 (1954); *Independent School Dist. v. Rosenow,* 185 Minn. 261, 240 N.W. 649, 79 A.L.R. 434 (1932). And *see* Annotations 68 A.L.R.2d 1041 (1959).

For the foregoing reasons, the decision of the Court of Appeals is vacated and the judgment of the Superior Court is affirmed.

CAMERON, C. J., and HAYS and GORDON, JJ., concurring.

HOLOHAN, Justice (dissenting).

The construction by the majority of A. R.S. § 15–1302 in literal terms may be good composition, but, in my view, it is bad law. Statutes are not literary exercises in composition; they are instruments of government. *United States v. Shirey,* 359 U. S. 255, 79 S.Ct. 746, 3 L.Ed.2d 789 (1959). Departure from the literal or so-called plain meaning may be necessary in order to effect the legislative purpose. *Malat v. Riddell,* 383 U.S. 569, 86 S.Ct. 1030, 16 L. Ed.2d 102 (1966).

Legislation is the product of a practical process of achieving a consensus by lawmakers, and courts should be sympathetic, not pedantic, in giving meaning and effect to the product of such efforts. There is a presumption against a construction which would render a statute ineffective, inefficient, or injurious to the public. *Bird v. United States,* 187 U.S. 118, 23 S.Ct. 42, 47 L.Ed. 100 (1902). Courts are not limited to a literal meaning in interpreting a statute where acceptance of such meaning would lead to absurd results or would thwart the obvious purpose of the statute.

The construction of A.R.S. § 15–1302 by the majority in effect gives to a minority of electors the right, if their number is at least 15 percent of those on the poll list, to keep an issue constantly unresolved through successive elections. This result was certainly not desired by the legislature, and the authorities cited in the opinion of the Court of Appeals indicate that such a construction is not necessary.

In my judgment the decision of the Court of Appeals is correct and the petition for review should not have been granted.