## JEMIMA SHERWIN v. ALPHEUS BUGBEE.

After an acquiescence of all concerned, for more than fifteen years, in the proceedings of school districts in a town, as such, the regular division of the town into such districts, and the regular organization of such districts, will be presumed.

The fact of the existence and continued operation of a school district, for the purpose of raising a presumption of its legal organization, may be shown by witnesses upon the stand, when the loss of the records of the district is shown; and *quære*, whether such proof would not be sufficient for that purpose, without proof of the loss of the records.

A school district, after the suspension of all its functions for ten years, may properly organize anew, when required so to do by the town;—and that without being, by a vote of the town, set off anew and constituted a school district.

It is not necessary to state in the warning of the school meeting for such new organization, nor in the record, that such meeting was warned upon the application of the required number of freeholders; the proceedings in this respect will be presumed regular.

A school meeting, warned without naming in the warrant the hour of the meeting, is irregular, and its proceedings are void; and the defect is not cured by an adjournment to another day, naming the hour of that day.

A vote of the district, at such meeting, to raise a tax will not justify the collector in an action of trespass against him for taking property to satisfy the same.

A collector of a school district, distraining property to satisfy a tax, need not sell the property in his district;—if sold in the town, it is sufficient.

By the law of this state beasts of the plough are not exempt from distress for taxes.

TRESPASS for taking a pair of oxen. Plea, the general issue, with notice that the defendant would justify the taking as collector of school district No. 4 in Windham. Trial by jury.

The plaintiff having shown the taking, as set forth in the declaration, the defendant, in pursuance of his special notice, and to show the division of the town of Windham into school districts,

Sherwin v. Bugbee.

offered in evidence a transcript from the records of the town, which showed the appointment of a committee, at a town meeting held Sept. 20, 1796, to divide the town into school districts, and the report of the committee making such division. But it did not appear from any record that the town ever accepted said report. The plaintiff resided within the limits assigned by said committee to district No. 4.

The defendant also offered *parol* testimony that the said district was duly organized soon after the date of said report, and continued to do all the acts of a school district in full operation, with regular officers, schools, and records, until about the year 1821 ; that their records, prior to the year 1821, were now lost; — and also offered the records of the district, showing the same state of affairs, as to keeping up an organization, until the year 1829.

From 1829 to 1839 there were no records kept, and it was shown that during that time the district held no meetings, and had no officers, but received from the town their proportion of the school tax, and expended the same in support of schools kept in the dwellings of the inhabitants, until the town officers, about the year 1839, refused any longer to pay them any portion of the school money, unless they maintained a regular organization. The town, at their March meeting in 1839, voted to give the district their proportion of the public money, if they should organize by the fourth of April, 1839.

The defendant also offered in evidence a transcript of the records of the district, showing the warning of a school meeting of "the inhabitants of the fourth school district, *formerly* so called," to be held March 27, 1839, " for the purpose of organizing the district," signed by the selectmen of the town, and not stating on whose application the warning was made ; also showing a meeting holden in pursuance of said warning, and an organization of the district.

The defendant also offered in evidence a transcript of the records of the district, showing a warning of a school meeting, to be holden Nov. 29, 1841, for the purpose of raising a tax, but not specifying the hour of the day at which the meeting was to be holden ; also showing an adjournment of the meeting to Dec. 3, 1841, at 6 o'clock P. M. ; and showing that, at said adjourned meeting, the tax was voted, for the satisfaction of which the oxen in question were taken.

Sherwin *v.* Bugbee.

To all which testimony the plaintiff objected,—but the objection was overruled by the court. The oxen were, by the defendant, advertised to be sold, and were sold, in the most public place in town, but not within his district. It appeared that the plaintiff, at the time the oxen were taken by the defendant, had sufficient other property, which might have been taken to satisfy the tax.

No question was made and decided upon any other portion of the testimony introduced by the plaintiff, necessary to make out for him a complete justification.

The court charged the jury that the facts shown were sufficient to justify the defendant, except as to his proceedings in the collection of the tax, and that, from the testimony, the jury would be justified in finding all the facts necessary to make those proceedings regular. Verdict for the defendant. Exceptions by plaintiff.

*W. C. Bradley* for plaintiff.

1. At the time of the town meeting in 1796 the statute required that the division of the town into school districts should be made in a legal town meeting. Statute of 1787, [Hasw. St. 158.] It was not a power to be delegated to a committee absolutely, without giving those dissatisfied an opportunity to be heard by the town. 1 Bac. Ab. [Wilson's] 319. *Rex v. Hamstall Ridware,* 3 T. R. 380.

The report was made to an adjourned meeting, of which no warning appears, or is suggested. Nor does it appear to have ever met the acceptance of any legal town meeting. *Schoff v. Bloomfield,* 8 Vt. 478. *Pierce v. Carpenter,* 10 Vt. 480.

But it is said, that, for the first twenty four years after the vote of the town, it appears that there were records of the district, which were lost, and that therefore the proceedings may be proved by parol. But it is contended that this has never been done to the extent assumed. *Britton v. Lawrence et al.,* 1 D. Ch. 105. *Green v. Dennis,* 6 Conn. 292. Besides, the fact of the abandonment of their organization and its repudiation by the town authorities raises a presumption against them. Moreover, the meetings, under authority of which the tax in question was laid, were called and holden by officers appointed under the new organization, and not under the old; and the two organizations cannot be used to aid each other. *Thomas v. Gibson,* 11 Vt. 607. Nor could the new organization

56

be had, without some action of the town constituting the district; for the proceedings which took place thirty three years before were not sufficient for that purpose, because what might be "conveniency of accommodation" in 1796 might not be such in 1839. Statute of 1787, *ut sup.* Rev. St. 111, § 2. Nor does the new organization appear to have been made on any application shown, or suggested.

2. The warrant for the meeting in November, 1841, specifies no hour of meeting. *Beattie* v. *Robin,* 2 Vt. 184.

3. The property ought to have been advertised to have been sold within the limits of district No. 4. Rev. St. 114, § 17; 373, § 7.

4. It is to be decided whether beasts of the plough can be taken, when there is other property sufficient. Certainly they could not be taken as a distress, and for reasons peculiarly " adapted to our local situation and circumstances" as an agricultural people; Rev. St ch. 27, § 1; *Simpson* v. *Hartopp,* Willes 515; and the taking goods for rates and taxes is always denominated a distress,— and so by our statute. Rev. St. 373. Nor is the authority in Burrow, 579, conclusive,—the decision having been made principally on the ground that the seizure was rather in nature of an execution, because a *distress* could not be sold,—which is not now law, 3 Kent, 1st. Ed., 381,—and also for the reason that the distress is created by statute, and therefore not so old as the common law,—a matter which ought to have but little weight. Fitz. Nat. Brev. *fol.* 90 *b.* Bracton, *lib.* A., *fol.* 217 *a.* Fleta, *lib.* 2., c. 48, p. 103. Co. Lit., *fol.* 58 *b.*

The statute ( p. 373, § 5,) exempts from distress " arms and accoutrements;" but this is without regard to the sufficiency of other property, and besides, is evidently cumulative. It could never have been intended to leave a man's accoutrements and take from him the very necessaries of life;—and women, as in the present case, would have nothing excepted.

*Kellogg* and *Keyes* for defendant.

1. The testimony offered by the defendant, and admitted by the court, was correctly admitted. From the appointment and report of the committee of division, on record for nearly fifty years, and a constant recognition by the town of that division, the court will presume the acceptance and adoption of said division by the town. 3 Vt. 542, *Schauber* v. *Jackson.* 2 Wend. 13. 10 Johns, 377, 381. 2 Hen. & Munf. 370. 1 Bay 26.

Sherwin *v.* Bugbee.

2. The *hiatus* of ten years, from 1829 to 1839, could have. no effect to dissolve a political corporation; but, having no officers during that time, its organization was lost, and the district might well re-organize. 11 Vt. 608.

3. The evidence put in was sufficient to justify the inference that the defendant, in demanding the tax, exhibiting his bill, posting and selling, complied with the law.

The opinion of the court was delivered by

REDFIELD, J. The first question made in this case, in regard to the division of the town of Windham into school districts, cannot, I apprehend, at this day, admit of much doubt. The same rule which is applied to this district will apply, of course, to all the other districts in the town. It is now well settled in this state, notwithstanding the decisions reported to the contrary, that the mere fact of a school district maintaining its existence and operation for a great number of years, say fifteen, is sufficient evidence of its regular organization. The same rule of presumption must be applied to the subdivision of the town into districts. In addition to the fact of the lapse of time, and of the acquiescence of the town and the inhabitants of the territory, now claimed as a school district, in the acts of the corporation, we have the proceedings of the town in 1796, preparatory to a division of the town into school districts,— although there was no vote constituting an actual division,—and the immediate organization of the several school districts, this among the rest, and the express vote of the town in 1839, recognizing this as a "*late* school district." To say, then, that, under these circumstances, any doubt can exist of the sufficiency of the proof upon this point would be to set at defiance the whole doctrine of presumptions, as applied to this subject. *Dillingham* v. *Snow*, 5 Mass. 547.

2. There can be no good ground of doubt of the correctness of the proceedings of the county court, in receiving proof of the loss of the records of the school district before 1821 ; and, as the proof of the loss is not detailed in the bill of exceptions, no question arises in regard to its sufficiency. The loss of the records being shown, no other evidence remained of the proceedings of the school district, except that of witnesses upon the stand. Whether this

would be sufficient for all purposes, it is not necessary to determine; it clearly was sufficient to show the continued existence of the district, and very likely would have been sufficient for that purpose without showing the loss of the records.

3. There does not seem any good ground of objection to the re-organization. The suspension of all the functions of the corporation for so long a term as ten years would seem a sufficient reason why there should be a new organization; but it would not necessarily be conclusive evidence of a dissolution of the corporation. And, as the town saw fit to aid in the re-organization, there can be now no ground for the town to claim that the corporation had become extinct.

4. The organization in 1839 seems regular. It has not been customary to state in the warrants for school meetings, or in the record, that such meetings were warned upon the application of the required number of freeholders; *omnia rite acta* is the maxim applied to this and all similar subjects.

5. We do not well see how the meeting, at which the tax was voted, can be considered legal. It was warned to be holden on a particular day, but no time in the day was specified. The statute upon the subject requires that the notice shall be in writing, and shall " specify the business to be done, and the time and place of holding said meeting." It has been decided that such meeting is void for all purposes of transacting business not specified. *Hunt* v. *School Dist. in Norwich,* 14 Vt. 300. We have no doubt the place of holding the meeting must be definitely specified. It would hardly do to warn a meeting to be held at *some* place in the district, or at a designated village, or at one of two or more dwelling houses. So, too, in regard to time, there seems to be a propriety in having it definitely fixed. If the day, only, is named, the question immediately arises, shall the inhabitants be required to attend the whole day? or when can the meeting transact the business for which they meet, so as to bind the absent members? In addition to these considerations, the uniform practice under this and similar statutes for fifty years is a matter of no slight weight in fixing the construction of a statute. Any rule, too, that we might here adopt in regard to this subject might, with equal propriety, be extended to all meetings of municipal corporations, when the statute upon the sub-

Sherwin v. Bugbee.

ject is general. These considerations induce us to say, that the proceedings of this meeting cannot be considered legal. We think the fact, that the meeting adjourned to another day and hour, will not help the matter, on the obvious principle that the adjourned meeting could have no more authority than the original meeting, which was void. To argue the contrary would be to suppose that additional *momentum* might be acquired without the application of *new force.* This so far determines the case that there does not seem any necessity of examining the other points.

But two matters, which have been discussed at the bar, seeming to be of some practical importance, we will report our determination concerning them.

1. It seems to have been supposed that it was necessary for a school district collector to advertise property within his district. But I cannot see why the statute does not determine this. The Revised Statutes, page 376, section 26, provide that the collectors of all municipal corporations "shall have the same power in all things, and proceed in the same manner," as constables do in the collection of state taxes. On page 373, section 7, it is provided, that constables shall advertise property " in some public place in the town in which it was taken." On page 374, section 14, it is provided that the constable, or *collector* of *any tax,* shall have power to collect the same in any place in the state." This would seem to settle the question, unless we restrict the power of school district collectors beyond the *words* of the statute,—which no court would be inclined to do, without some very sufficient reason, which does not seem to exist in the present case.

2. In regard to the right of distraining beasts of the plough, there are two reasons, which to us seem sufficient, why no such exemption was intended in this state.

1. The statute expressly exempts from distress for taxes such " arms and accoutrements " as it is the duty of such person to keep. This, by fair implication, will make all other property liable to the distress, upon the well known maxim that *expressio unius exclusio alterius est, et vice versa.*

2. Our distress for taxes is not like distress in England. At common law, as I understand the subject, distress was in the nature of a pledge merely, and could not be sold at all. It was a

right originally exercised by the feudal landlords, to compel those various services which that species of tenure required from the tenant. At common law, and in early times, this right of redress by one's own act was very much abused by the landlords, to the great oppression of the tenants. Many ancient statutes were passed regulating the right of distress; and the modern right of distress for rent, which naturally grew out of the former, is almost altogether the creature of various English statutes. It is only in this particular species of distress, that this exception of beasts of the plough obtains, even in England. Co. Lit., 47 *a b*, Thomas' Ed., vol. 3, p. 210 at top, and notes. Distress for poor rates, it is admitted upon all hands, never allowed any such exception. *Hutchins* v. *Chambers*, 1 Burr. 579. And the exception never extended to cattle taken *damage feasant*, or to enforce amercements. Comyn's Dig., Distress B 4. *Smith* v. *Sheppard*, Cro. Eliz. 710.

But the true reason, why no such exception, as is claimed, obtains here, is found in the fact that the distress for taxes is " *in the nature of an execution.*" In ancient times, when the distress was to be kept indefinitely, until the debt was paid, or the service performed, and the party aggrieved was his own avenger, there were obvious reasons why so many exceptions were provided. There is one exception from the taking of cattle *damage feasant*, that is, when the owner is with his cattle, leading, or riding, or perhaps driving them, which still obtains,—and this to avoid breach of the peace.

Judgment reversed, and case remanded.