STATE EX REL. THOMAS C. VENNER *v.* CHARLES ZANLEONI, JR.

May Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 5, 1923.

*Quo Warranto—Title of Complainant Must Be Alleged in Complaint When by An Individual—Burden of Proof—Elections —Illegal Votes—Evidence Which Will Be Considered by Supreme Court.*

1. Where a private individual institutes *quo warranto* proceedings to obtain possession of an office held by another, the facts showing his title must be stated in the complaint, even though the state is a nominal party to the proceedings.

2. In such a case the burden is on the complainant to establish his right to the office.

3. Where *quo warranto* proceedings were instituted and prosecuted by a private individual under the authority conferred by G. L. 2250, the State is not an actual party to the proceedings, although the title of the case may indicate otherwise, not being

concerned with the outcome of the controversy, and the burden rests upon the complainant to establish his case.

4. The mere fact that illegal votes were cast at an election does not vitiate the election, if the result would not be changed by rejecting all such votes.

5. In *quo warranto* proceedings, where no exceptions to the admission of evidence are briefed, all the evidence before the Supreme Court will be treated as properly in the case.

6. In *quo warranto* proceedings by a private individual to obtain possession of an office held by another, evidence *held* to show that a certain witness, not qualified to vote under the Barre City Charter, had voted for the defendant contrary to the testimony of such witness, and that by the rejection of all votes shown by the evidence to have been illegal the complainant, and not the respondent, was legally elected to the office in question.

PETITION for a writ of *quo warranto* brought to the Supreme Court for Washington County, and heard at its May Term, 1923, on the pleadings and testimony taken. The opinion states the case. *Judgment for complainant.*

*J. Ward Carver* and *W. W. Lapoint* for the petitioner.

An illegal voter called as a witness may be asked for whom he voted, and if he declines or is unable to answer, or if he makes an untrue answer, circumstantial evidence may be received to prove the fact, and he may be asked for whom he intended to vote as bearing on the question. *People* v. *Pease,* 27 N. Y. 45; Cushings Legislative Parl. Law, Am. ed., §§ 199 to 210.

In *quo warranto* the burden is on defendant to show his right to hold office, of which the certificate of election is only *prima facie* evidence. *Attorney General* v. *Newell,* 85 Me. 273; *State* v. *Pease,* 27 N. Y. 45; *Judkins* v. *Hill,* 50 N. H. 140; *Attorney General* v. *Barstow,* 4 Wis. 567; *People* v. *Mayworm,* 5 Mich. 146; *Clarke* v. *People,* 15 Ill. 267; *State* v. *Beecher,* 15 Ohio 723.

*Elwin L. Scott* and *S. Hollister Jackson* for the defendant.

SLACK, J.  This is a petition for a writ of *quo warranto,* brought under G. L. Chapter 111, to try the title of the com-

plainant and the respondent to the office of alderman for ward three in the city of Barre. Both were candidates for that office at the city election held March 6, 1923, and both claim to have been elected. The returns of the election officials show that the complainant received three hundred and ten votes and that the respondent received three hundred and eleven votes. The latter was declared elected, duly qualified, and still holds the office.

No question is made but that the election was held and conducted in a lawful manner, but the complainant challenges the respondent's title to the office, as against him, on the ground that the votes cast and counted for the respondent included the votes of persons who were not legal voters in ward three, which if rejected would give the complainant a plurality of the legal votes cast, and, consequently, entitle him to the office. As presented this is purely a question of fact to be determined from the evidence submitted by the respective parties, which is in the form of depositions.

The complainant contends that on the issue presented, the respondent has the burden of proof, and this is the first question considered.

[1-3] The ancient writ of *quo warranto* was a writ of right for the king, against one who usurped any office, franchise, or liberty, to inquire by what authority he supported his claim in order to determine the right. 3 Bl. Com. 262. In theory, the king was the fountain of honor, of office, and of privilege. And, whenever a subject undertook to exercise a public office or franchise, he was, when called upon by the crown, through the writ of *quo warranto,* compelled to show his title, and if he failed to do so, judgment passed against him. The foundation of the rule may have been that, as all offices and franchises are the gift of the king, they were deemed to be possessed by him, and, until his grant was shown, there could be no presumption that he had parted with them, or invested a subject with the right to exercise, by delegation, any part of the royal prerogative; but whatever may have been the origin of the rule, it was well established, and was applied also in cases where proceedings by information, in the nature of *quo warranto,* were resorted to as a substitute for the writ. *Rex* v. *Leigh,* 4 Burr. 2143. And the general rule is that, when the respondent is called upon by the

state to show his title, that is, when the state is the party actually interested in *quo warranto* to test the right of the occupant to hold an office, his plea or answer presents the first question, and the burden of proof is upon him to establish it. 32 Cyc. 1460, and cases there collected. Whether our own cases are in conflict with this rule, it is unnecessary to inquire at this time, since the instant case falls within the rule, equally well established, that, where a private individual institutes proceedings to obtain possession of an office held by another, the facts showing his title to such office must be stated in the complaint, and the burden is upon him to establish his right thereto. 32 Cyc. 1460; 17 Enc. Pl. & Pr. 482; *People* v. *Lacoste,* 37 N. Y. 192; *State* v. *Davis,* 64 Neb. 447, 90 N. W. 232; *State* v. *Moores,* 52 Neb. 634, 72 N. W. 1056; *State* v. *Wheatley,* 160 Ind. 183, 66 N. E. 684; *State* v. *Kupferle,* 44 Mo. 154, 100 A. D. 265. And this rule obtains even though the state is a nominal party to the proceedings. Our own cases go to this extent, at least. *State ex rel. Danforth* v. *Hunton,* 28 Vt. 594; *Clark* v. *Wild et al.,* 85 Vt. 212, 81 Atl. 536, Ann. Cas. 1914C, 661. The complaint before us was preferred, and is being prosecuted, by a private person under the authority conferred by G. L. 2250, which provides: ''The complaint may be preferred and prosecuted by the state's attorney of the proper county, by virtue of his office, either upon his motion, or upon the relation of a private person; or it may be preferred and prosecuted by a person interested in the matter of the complaint and the judgment sought; in which last case, the complaint shall be verified by oath and security for costs taken to the defendant by way of recognizance.'' Manifestly, the State is not the actual party to these proceedings, although the title of the complaint might indicate otherwise, and is not concerned with the outcome of the controversy. This being so, the burden of proof is with the complainant. Has he discharged this burden?

[4]   The charter of the city of Barre, as amended by No. 239, Acts 1908, after defining who are voters in a city election, provides: ''In voting for alderman or school commissioners every such voter shall vote only in the ward of which he is at the time an inhabitant, and he shall not vote in any ward in which he has not resided for thirty days next preceding any such election.'' Besides the six hundred and twenty-one votes cast for

the complainant and respondent, there were nine blank votes cast. That eight persons who participated in the election, namely, Wilfred Solomon, Mario Zanleoni, Basilio Dente, Giovanni Zorzi, Frank Lascor, Guiseppe Zorzi, Antonio Barberi, and Frank Debitetto were not legal voters in ward three according to the charter requirement is virtually admitted by both parties. All of those persons were called as witnesses, either by the complainant or the respondent, and testified, without objection for whom they voted. The four first named testified that they voted for the complainant, the next three testified that they voted for the respondent, and Debitetto testified that he cast a blank ballot for alderman. One Durward Imlah also testified that he voted for the respondent. The respondent claims that Imlah was a legal voter in ward three, but Imlah's testimony, which is undisputed, so far as we have been able to find, clearly establishes the contrary. It follows, if the testimony of these persons as to how they voted is to be believed, that the complainant and respondent each received an equal number of illegal votes. If this is so, the complainant has failed in his proof, because if these votes were rejected the result would not be changed. The mere fact that illegal votes were cast does not vitiate the election. *Sudbury* v. *Stearns,* 21 Pick. (Mass.) 148; *Trustees* v. *Gibbs,* 2 Cush. (Mass.) 39; *Ex parte Murphy,* 7 Cowen (N. Y.) 153; *People* v. *Tuthill,* 31 N. Y. 550; *Tarbox* v. *Sughrue,* 36 Kan. 225, 12 Pac. 935.

[5, 6] The credibility of Solomon, Debitetto, Barberi, and Guiseppe Zorzi is not seriously questioned by either party, and we find that they voted as appears by their evidence.

As already seen Mario Zanleoni, Basilio Dente, and Giovanni Zorzi testified that they voted for the complainant; and Lascor and Imlah testified that they voted for the respondent. Each party attempts to combat the testimony of the persons who testified that they voted for him, both by impeaching the person so testifying and by showing the improbability of his testimony. No exceptions to the admission of evidence are briefed, and, therefore, all the evidence before us is to be treated as properly in the case. To go into a lengthy discussion of this evidence, relating, as it does, to each of the five persons last named, would be a needless waste of time and space. It is sufficient to say that it has been examined with that degree of care which the im-

portance of the case demands, and it does not, in our opinion, justify a finding that any of these persons, except Mario Zanleoni, voted otherwise than as testified to by them. The evidence relating to him is much stronger than that concerning any other person whose testimony is attacked. He is a brother of the respondent. He testified that he and his brother are friendly, that he was interested in his brother's campaign "to a certain extent," and that he did not "hope" Venner would win—didn't want him to be elected. He also testified that he was active throughout election day carrying voters to and from the polls, and that for that purpose he used an automobile upon the windshield of which he displayed a placard which read, "Vote for Alderman—Ward Three Charles Zanleoni, Jr." It appears from the evidence of one Keast, who was a candidate for mayor at the same election, and one Stewart, that Mario told them before election, in substance, that he was going to vote for Keast for mayor, but had got to vote for his brother for alderman. Mario's explanation of why he voted for the complainant is that he thought that his brother was going to have a landslide and he wanted to give the complainant "a little show." Concerning his activities on election day, he testified that he worked as much for the complainant as he did for his brother, that he was as much interested in getting out votes for the former as for the latter, and that he used his car to get votes for both. This evidence of why he voted for the complainant, and what he did on election day, is so highly improbable, in view of the circumstances and other testimony already noticed, that no trier could hesitate to doubt its verity. The history of legal jurisprudence shows that a person's conduct is often more reliable to establish the truth than his spoken words. A falsehood is easily uttered, but seldom successfully acted, especially when the actor has no incentive to do other than the natural thing. Mario, who was friendly with is brother, interested in his campaign to a certain extent, and did not want his opponent to be elected, acted naturally when he told Keast and Stewart that he had got to vote for his brother; he acted naturally when on election day he publicly advocated his brother's cause by placarding his car in the manner testified to by him. Rational men would naturally expect that, in the circumstances, he would vote for his brother, that would have been in keeping with his conduct and with his pre-

election declarations—the natural, the expected thing. However, notwithstanding these potent circumstances tending to establish the contrary, we are asked to believe, on the unsupported evidence of this witness, that he voted for the complainant, merely, to give him "a little show." This we cannot do. We think this man's conduct is more indicative of the truth as to how he voted than his testimony on that subject; and that his testimony is an attempt to sustain the result which his illegal vote helped to produce. That he voted for some one, he admits; that he voted for his brother, we entertain no doubt, in the circumstances, and we, therefore, find accordingly.

We find that Frank Lascor, Guiseppe Zorzi, Antonio Barberi, Durward Imlah, and Mario Zanleoni voted for the respondent, and that Wilfred Solomon, Basilio Dente, and Giovanni Zorzi voted for the complainant. Rejecting the five illegal votes cast for the respondent, we find that he received three hundred and six votes; and rejecting the three illegal votes cast for the complainant, we find that he received three hundred and seven votes, and that he was elected to the office in question.

*It is, therefore, adjudged that the respondent, Charles Zanleoni, Jr., is not entitled to exercise the office of alderman in ward three in the city of Barre, and judgment of ouster is rendered against him as if the writ prayed for had issued in the first instance, as is provided by G. L. 2251.*

*Judgment is rendered that the complainant, Thomas C. Venner, is duly elected alderman for ward three in the city of Barre, and when he qualifies in the manner provided by law, he is authorized to act as such. Let the complainant recover his costs.*