STATE *v.* THE ELKS CLUB OF MONTPELIER.

May Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 3, 1939.

398

*H. C. Shurtleff* for the respondent.

*Webster E. Miller,* State's Attorney, for the State.

SHERBURNE, J. Section 11 of Part II of No. 38 of the Acts of 1937 provides that a state's attorney and certain others may make complaint under oath or affirmance before a justice of the county, or a judge of a municipal court, for a search warrant for certain articles kept or intended for use contrary to law, and that such justice or judge shall thereupon issue a warrant to

search the premises described in the complaint. Section 13 of this act provides for a hearing and the condemnation of such articles found and seized upon such search warrant.

In this case the state's attorney made out a written complaint addressed to the judge of the Montpelier municipal court for the search of respondent's premises for gambling machines, pursuant to the provisions of the foregoing section 11. He then exhibited the complaint to, and made oath to the truth thereof before, the clerk of Washington County, who thereupon signed a warrant directing a search of respondent's premises, and commanding that any gambling machines so found be seized, and that the owner or keeper thereof be apprehended and forthwith had to appear before him at the court room of the Montpelier municipal court, and show cause why such machines should not be adjudged forfeited. Pursuant to this warrant the officer seized three gambling machines and arrested a named person as their owner or keeper, and later such proceedings were had before the Montpelier municipal court that such machines were ordered destroyed, the money therein was ordered forfeited to the State, and the respondent was ordered to pay the costs. To such orders the respondent excepted. The only question raised here is whether the county clerk was authorized by law to issue this warrant.

It is for the Legislature to say who may issue process, and unless it bears the signature of someone authorized to issue it, it is fatally defective. *Anderson* v. *Souliere*, 103 Vt. 10, 151 Atl. 509. Search warrants may be issued only by officers authorized to do so, and one issued by an officer without power so to act is a nullity. 56 C. J. 1209, § 109. Here, although no motion to dismiss was made below, and the only exceptions are to the orders made by the court, it is clear that the court had no power to make such orders under the foregoing section 13 unless the machines were lawfully seized; hence a question of jurisdiction is presented, which may be raised here for the first time. *Smith* v. *White's Est.*, 108 Vt. 473, 480, 188 Atl. 901.

Our attention is called to P. L. 1409, which provides:

"All writs of summons or attachment, warrants, executions, or other forms of legal process that may issue from and be made returnable to a justice of

> the peace, may issue from and be made returnable to a municipal court, and may be signed by the judge or by the clerk thereof. Writs of summons or attachment and warrants, returnable before such court may be signed by a county clerk, a master in chancery or by a justice of the peace of the county in which such court is situated.''

and it is insisted that the word ''warrant'' as used in this section includes a search warrant. By examining the provisions of G. L. 1644 and 1704 (now P. L. 1489) it will be seen that although civil proceedings could be instituted in a municipal or city court upon process signed by the county clerk, a justice of the peace or a master in chancery, criminal proceedings could not be commenced therein except on a warrant signed by the judge or clerk of such courts. By No. 68 of the Acts of 1921, G. L. 1644 was so amended as to authorize a county clerk, justice of the peace or master in chancery to sign a warrant returnable before such courts. By No. 32 of the Acts of 1933, a uniform system of municipal courts was created to replace the former municipal and city courts which had been created by special acts, and from sections 9 and 10 of that act are derived the provisions of P. L. 1409. It is obvious from this legislative history that it was the purpose of the Legislature to make the municipal courts more accessible for criminal proceedings.

P. L. 1409 is a general statute, whereas the statute authorizing this search is a special statute; and it is our duty to read both the general and special statutes together and harmonize them if possible with a view to giving effect to a consistent legislative policy; but to the extent of any repugnancy between them, the special will prevail regardless of their order or dates, the special statute being regarded as an exception to or qualification of the general one. *In re James,* 99 Vt. 265, 272, 132 Atl. 40; *Belfore* v. *Vermont State Highway Dept.,* 108 Vt. 396, 400, 187 Atl. 797. The statutes are repugnant, and the statute before us clearly falls within the latter provision of this rule, and because of being later in date of enactment controls for that reason also. *Belfore* v. *Vermont State Highway Dept., supra.* We hold, therefore, that the county clerk was not authorized to sign this search warrant. As he was not authorized to sign the warrant

we need spend no time with the other irregularity of making the warrant returnable before himself.

*Judgment reversed, and search warrant quashed. Let the seized machines be returned.*