IRA W. GARRETT *v.* BENJAMIN W. FISHER AS MAYOR OF THE CITY OF ST. ALBANS.

(75 A2d 674)

May Term, 1950.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed October 3, 1950.

*John L. Folsom* for the petitioner.

*Harold C. Sylvester* and *P. C. Warner* for the petitionee.

CLEARY, J.   This is a petition brought by Ira W. Garrett, a citizen, taxpayer, and legal voter of the City of St. Albans against Benjamin W. Fisher, as Mayor of said City, praying that the Supreme Court cause a Writ of Mandamus to be issued commanding the mayor to call a special meeting of the legal voters of the City of St. Albans.   The Court appointed a Commissioner to hear the cause who found and reported the following facts.

The shortage of a water supply for the City of St. Albans became critical in the summer of 1949; since then the city council has considered the problem at numerous meetings.   The council recognized that whatever water project was developed, a supply of pipe would be necessary and difficult to obtain.   On November 8, 1949, the council authorized the mayor to enter into contracts to purchase three miles of cast iron pipe, if obtainable, and to enter into negotiations with W. H. Boardman with the idea that Boardman be engaged as resident engineer.

At a meeting of the city council on December 14, 1949, the mayor reported that, pursuant to the authority granted him on November 9, 1949, he had contracted for 16,000 feet of cast iron pipe with Tri-State Water Conditioning Company, Incorporated, at $5.88 per foot f.o.b. trench site in the vicinity of St. Albans, with payments to be made weekly by the city on each week's actual delivery and that it was necessary to bind the contract with a $5000 down payment. Thereupon the city council authorized the mayor and city treasurer to borrow and to execute and deliver promissory notes not to exceed $100,000 for the purpose of paying outstanding obligations and for current expenses for the year 1949, payable for a term not exceeding one year from the date of execution and delivery of said notes.   The purpose of that authorization was to arrange for the purchase of pipe in anticipation of a bond issue by the city.

On January 25, 1950, the city council directed the mayor to obtain the services of W. H. Boardman as resident engineer and to purchase the necessary pipe when and if the so called Beaver Meadow Brook Project was approved and a proposed bond issue authorized by the legal voters of the city, and then, that the expense incurred in obtaining an additional supply of water be transferred to the water department of the city and to the proposed bond issue.

On January 31, 1950, the legal voters of the city, at a meeting duly warned, voted approval of the project and authorized a bond issue to provide funds for its cost and expenses.

On February 3, 1950, the mayor signed a contract with W. H. Boardman whereby Boardman agreed to act as resident engineer on the Beaver Meadow Brook Project and the city agreed to pay him a weekly salary of $125 plus six cents per mile for each mile traveled in the performance of his duties.

On February 3, 1950, the mayor signed and forwarded to the Tri-State Water Conditioning Company, Incorporated, an order for 16,000 feet of cast iron pipe at $5.28 per foot delivered on cars at Everett, Massachusetts. That order stated that all money already paid to the Company by the city was to apply on the cost of pipe referred to in the order and that any other order or agreement previous to February 3, 1950, was cancelled. At that time a small amount of pipe had already been delivered and paid for. Pursuant to the order of February 3, 1950, the Tri-State Company shipped the pipe which the city received and accepted at a cost of $84,000 plus freight charges of $6000. Delivery of the pipe was completed during February 1950 and payment in full was made to the Tri-State Company with funds the city obtained from bank loans which are still owed with interest.

W. H. Boardman is a professional civil engineer and on February 3, 1950, could have had another job which he refused after signing his contract with the city. If he is not allowed to complete his contract with the city he will suffer substantial damage. On March 28, 1950, the city council authorized the mayor to notify Mr. Boardman to begin his engineering duties on Monday, April 3, 1950. In the event that the legal voters of the city should rescind their vote of January 31, 1950, the pipe now on hand could be used on another water project and such a project would require the services of a resident engineer.

Six different written petitions, each signed by more than 25 per-

sons, legal voters of the city of St. Albans, were filed with the City Clerk on February 6, 10, and 13, 1950, March 24, 1950, and April 18 and 29, 1950, each requesting the City Clerk to call a special meeting of the legal voters of said city to see if the voters would rescind the action taken in the meeting of January 31, 1950, regarding the water reservoir project at Beaver Meadow Brook and the bond issue for its cost and expenses. Both the city clerk and mayor of the City of St. Albans had knowledge of each of said petitions soon after it was filed. The petitioner's name appears on the petition filed April 29, 1950. Neither the city clerk nor the mayor have complied with the request contained in the petitions and both of them have failed to call a special city meeting as requested. No question is raised that the petitions were not properly brought under the provisions of the City Charter.

The petitioner claims that the mayor had no legal authority to make the Boardman agreement and to order the pipe from the Tri-State Company on February 3, 1950, because the authority which the city council might have given him after the city vote of January 31, 1950, could not be given the mayor on January 25, 1950. The petitioner also claims that, even if the city had made valid and binding contracts whereby vested interests had become fixed in third parties, the voters of the city have the right to rescind the vote of January 31, 1950; that the petitions on file do not ask for the rescinding of any contract; that there is no question raised by the petitioner that the city is not bound by any valid contract into which it has entered; that any liability under such contract would have to be paid and that would not prevent the voters from rescinding the project, paying for any such liability and doing what the voters please about their own water situation.

■ The mayor made the contracts on February 3, 1950, under the vote of the city council of January 25, 1950. That authorization was ratified and validated by the action of the voters in the city meeting on January 31, 1950. *Brown* v. *Winterport,* 79 Me 305, 9 A 844; *Jeffersontown* v. *Cassin,* 267 Ky 568, 102 SW2d 1001; *Bell* v. *Waynesboro,* 195 Pa 299, 45 A 930. So the mayor had the legal authority to make the contracts for the city which he did on February 3, 1950.

■ Whether voters of a city had the right to rescind their previous vote to erect a sewerage disposal plant and to issue bonds to pay for it was in issue in the recent case of *Denicore* v. *City of*

*Burlington,* 116 Vt 138, 70 A2d 582. We there held that the voters have the unlimited right of rescission in the absence of legislation and where the rights of third parties have not vested or intervened.

The mayor maintains that the contracts entered into on February 3, 1950, vested such rights in third persons as to justify him in refusing to honor the petitions requesting the call of a special city meeting.

The only persons who could possibly claim such rights are the bank which loaned the money to purchase the pipe and Engineer Boardman. Therefore, the case resolves itself into the question whether they have rights of such a nature that the voters of the city cannot rescind their previous vote.

Clearly the bank has no such right because the authorization to borrow the money now owed the bank was for the purpose of paying outstanding obligations and current expenses for the year 1949 and the money was not loaned as a result of the vote sought to be rescinded.

The findings show that Engineer Boardman has a simple contract for personal services. In case he claimed a breach of that contract he could not compel performance but could seek to recover damages. *Broad* v. *Spokane,* 59 Wash 268, 271, 109 P 1014; *Superior Incinerator Co.* v. *Tompkins,* Tex Com App, 59 SW2d 102.

There was no evidence or finding that any bonds have been issued. Neither the bank nor Boardman could successfully claim that any funds to be derived from the proposed bond issue were pledged to compensate them. Recission of the previous vote would not impair the right of the bank to recover its loans or the right of Boardman to recover damages.

Therefore, we hold that, when such contractual rights as are disclosed by the findings in this case, if not carried to fruition, can be fully and adequately compensated for by monetary damages, they are not such vested or intervening rights as will preclude a reconsideration by a municipality of the vote because of which claimants might contend such rights arose.

*The judgment is that the prayer of the petition is granted. Let a Writ of Mandamus issue commanding Benjamin W. Fisher, as Mayor of the City of St. Albans, to call a special meeting of the legal voters of the City of St. Albans, according to law, to see if the voters will rescind the action taken by them in the special city*

*meeting of January 31, 1950, regarding the water reservoir project at Beaver Meadow Brook and the bond issue for its cost and expense.*