Rockingham,
No. 5027.

EXETER *v.* JOSEPH L. KENICK, JR. *& a.*

Argued April 3, 1962.

Decided June 5, 1962.

*George R. Scammon* for the town of Exeter, furnished no brief.

*Halford F. Meras, Joseph L. Kenick, Jr.* and *Robert Shaw* (*Mr. Meras* and *Mr. Shaw* orally), pro se.

BLANDIN, J.   The main issue before us is whether procedural rules which were passed at annual town meetings to regulate the method of voting on certain appropriations at subsequent town meetings are binding on such meetings.

At the annual town meeting in Exeter on March 12, 1935, an affirmative vote was cast on the following article:   "To see if the town will vote to have all articles other than those legally, or otherwise, regular and necessary placed on an Australian ballot, if they involve, or are likely to involve, the sum of seven hundred fifty dollars or more.   This to be done with such articles for the annual town meeting of 1936 and each year thereafter."

This vote was later affirmed at the annual meeting on March 14, 1944, which adopted an article reading as follows:   "to see if the

town will vote that the ordinance, passed in 1935, providing that 'All articles other than those legally or otherwise regular and necessary, shall be placed on the Australian Ballot, if the amount involves or may involve the sum of seven hundred fifty dollars or more. This to be done with such articles for the annual town meeting of 1936 and each year thereafter,' is intended to apply to such appropriations whether at annual meetings or special meetings and that such articles shall be on the Australian Ballot in the future for both annual and special town meetings."

The method prescribed above was adhered to until the annual meeting of March 14, 1961, when certain articles calling for an expenditure of more than $750 and dealing with such matters as increases in town officers' salaries, repairs to the town hall and other buildings, storm sewer equipment, and raises for the police department, were not placed on the Australian ballot. However, the moderator permitted them to be passed upon by the meeting without use of the ballot. The validity of the affirmative vote was disputed by certain legal voters of the town, but the Legislature by Laws 1961, c. 353, legalized the proceedings.

It is a long established principle under our law that towns are but subdivisions of the State and have only the powers the State grants to them. *Eaton v. Bragg*, 96 N. H. 407; *Opinion of the Justices*, 101 N. H. 544. Any part or all of the local duties or obligations of the town may be assumed by the State through legislative action (*Opinion of the Justices*, 95 N. H. 544), and from ancient times the Legislature has frequently been called upon to legalize town meeting votes when questions as to their validity have arisen. It was proper for it to do so here.

The remaining questions now before us are within the jurisdiction of this court and have been so considered from early times up to the present. *Brackett v. Whidden*, 3 N. H. 17 (1823); *Sugar Hill Improvement Ass'n v. Lisbon*, 104 N. H. 40 (1962).

Towns are specifically permitted by statute to use the ballot system "for the election of town officers who are not chosen at the biennial election." RSA 59:71-73. Authorization to use the ballot system in voting on other matters is not delegated to towns for the purpose of binding future meetings. It should be noted however that where appropriations are made at special town meetings the statute requires that the vote be by ballot. RSA 31:5.

The State, in giving extensive powers to town moderators, has provided as follows: "The moderator shall preside in the town meet-

ings, regulate the business thereof, decide questions of order, and make a public declaration of every vote passed, and may prescribe rules of proceeding; but such rules may be altered by the town." RSA 40:4. This provision has remained substantially unchanged since 1842. R. S. [1842] 33:3. It is clear under this legislative grant that the moderator has "large discretion in providing rules for the government of his meeting, subject only to revision by the town." *Hill* v. *Goodwin,* 56 N. H. 441, 447; see to the same effect *Lamb* v. *Danville School Board,* 102 N. H. 569, 571. It also appears that the statute preserves to the town the right to establish the procedure for the particular meeting at which the vote is taken, including the right to compel a vote by ballot at that meeting.

When the moderator makes a procedural ruling as to the method of voting which, as in the present case, is not contrary to any statute, his ruling stands unless the town itself by vote reverses it. *Lamb* v. *Danville School Board, supra,* 571. The record before us discloses that no vote taken upon appeal from the moderator's ruling at the March, 1961 meeting, permitting votes to be taken without the use of the ballot, reversed his decision.

It must be considered that the extensive statutory powers given the moderator under RSA 40:4 cannot be taken from him except within the limits of section 4, that is, by vote of the meeting at which the ruling is made. It is also established law that unless authorized by statute a deliberative body such as a town meeting cannot pass procedural rules which will bind similar bodies at subsequent meetings, since rules of procedure expire at the adjournment of the body adopting them unless readopted in the future. *Ellis* v. *Stokes,* 207 Ga. 423; *Tayloe* v. *Davis,* 212 Ala. 282; 67 C.J.S., Parliamentary Law, *s.* 3b, *p.* 870; 81 C.J.S., States, *s.* 39, *p.* 956.

The reasons for this rule are obvious. Since circumstances change, it is essential to the prompt and efficient dispatch of town meeting business that the moderator exercise his statutory discretionary powers as to the procedure to be followed at each meeting. *Lamb* v. *Danville School Board,* 102 N. H. 569, 571. Ample protection against any abuse by a moderator of his powers is afforded by the fact that the meeting can reverse his decision. RSA 40:4.

Our conclusion is that in the absence of a clear authorization by statute the town of Exeter had no power to make the resolutions adopted in 1935 and 1944 binding on any future meeting including the 1961 meeting.

If, as argued before us, the majority of the Exeter voters wished to have the method of voting by ballot previously adopted applied at the 1961 annual town meeting, no sufficient reason appears why they could not, upon appeal from the moderator's ruling, have reversed his decision. They had the power to do so under RSA 40:4. Having failed to exercise their right at the 1961 meeting, they cannot now complain.

However, the actions taken at previous meetings pursuant to the votes passed in 1935 and 1944 were not questioned at those meetings and are deemed valid.

An order should be entered that the votes adopted in 1935 and 1944 are not binding on future town meetings.

*Remanded.*

LAMPRON, J., was absent; the others concurred.