Norman Appelget and Harold Elliott v. Philip E. Baird et al.

[ 236 A.2d 671 ]

October Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 5, 1967

*McKee & Clewley* for the plaintiffs.

*Patterson, Gibson & Noble* for the defendants.

**Barney, J.** The voters of Northfield have alternated between favoring and rejecting participation in a proposed union high school district. The affirmative vote came at a school district meeting on January 25, 1967, specially called to decide the issue of union with

Berlin, Roxbury and Williamstown. At simultaneous meetings those towns also voted to join the union.

The sequence and significance of subsequent events can best be understood in the presence of some of the statutory requirements relating to the formation of union high school districts. 16 V.S.A. §612(a) reads:

> When a majority of the voters of each town school district, or incorporated school district of a proposed union district present and voting by separate districts by Australian ballot at a school district meeting duly warned for that purpose for the same day and during the same hours which shall be at least eight consecutive hours shall vote to join with one or more neighboring school districts or with any one or more of several neighboring school districts as specified in the warning for the purpose of forming a union high school district as herein provided, such vote shall thereupon be certified by each clerk of the school district to the secretary of state; and when all school districts proposed as members of the union as specified in such vote shall have so affirmatively voted and the results thereon shall have been certified to the secretary of state, the secretary of state shall thereupon file the same in his office. The secretary of state shall thereupon give notice of the filing of such certificates to the commissioner of education. When the commissioner of education shall receive notice from the secretary of state that all school districts proposed as members of the union as specified in such vote shall have so affirmatively voted, he shall make an investigation into the feasibility of the establishment of such union high school district composed of the districts voting in the affirmative and shall report his findings to the state board of education. Such board shall thereupon meet and consider said findings for the purpose of deciding whether the formation of such union high school district will be for the best interests of the state and of the town and incorporated districts proposed as members of such union. Such board may request the commissioner to make further investigation and may consider any other information deemed by it to be pertinent. If, after due consideration and such further meetings as it may deem necessary, the board finds that the formation of such union high school district is for the best interests of the state and of the town and incorporated districts involved, it shall designate the union high school district by some

appropriate name and shall cause the commissioner to certify its findings to the secretary of state, who shall thereupon record the same. Upon such record, said union high school district shall become a body politic and corporate with the powers incident to a public corporation, be known by the name given in such certificate, by that name may sue and be sued, and may hold and convey real and personal estate for the use of such district. Such record shall be notice to all parties of the establishment of such union high school district with all the powers incident to such a district as herein provided. A certified copy of said record in the office of the secretary of state shall immediately be filed by him in the office of the clerk of each town school district or incorporated school district to be included within such union high school district as a member thereof; and such filing shall be prima facie evidence that the requirements for the creation of a union high school district as herein set forth have been fully complied with.

Subsections (b) and (c) of 16 V.S.A. §612 provide for the assumption of control of the high schools within its district by the new union, and its assignment to one of the supervisory unions established by the state board of education. 16 V.S.A. §613 requires the commissioner of education to call an organizational meeting of the union high school district within sixty days of the filing of copies of the certificate of formation of the union district in the office of the clerk of each town school district involved. At that meeting the election of appropriate officers is required, and other business in connection with organization may be transacted.

In this case, the stipulated facts show that the affirmative votes of all of the town districts concerned were certified to the secretary of state as required by the statute. Thereupon the designated officials were moved to appropriate and required action under the law culminating in the approval of the proposed district by the state board of education. That approval was certified to the secretary of state on February 23, 1967 and recorded in that office on March 1, 1967. A certified copy of that record was then filed with the clerk of each school district concerned. Thus the formal statutory requisites for making the new union high school district a body politic as Union High School District No. 31 were completed on March 1, 1967.

The Northfield vote in favor of the union was 488 to 356 opposed. On February 16, 1967, a petition was filed for reconsideration of the question under 24 V.S.A. §704:

A warning for an annual or special meeting of a municipality shall, by separate articles, specifically indicate the business to be transacted. Such warnings shall also contain any article or articles requested by a petition signed by at least five percent of the voters of the municipality and filed with the legislative branch not less than twenty days before the day of such meeting; provided, however, that any petition calling for the submission, reconsideration or rescission of any question previously submitted to the legal voters of said municipality shall be filed not more than thirty days after such previous submission; and provided further, that no question previously submitted to the legal voters of said municipality shall be more than once resubmitted or presented for reconsideration or rescission except by action of the legislative branch.

A special meeting of the Northfield town school district was held on March 21, 1967, where it was voted 657 to 515 to reconsider the vote of January 25, 1967, in favor of the union. As a result, a special meeting was held on April 25, 1967, at which the question of joining the union high school district was again presented to the Northfield voters in the same form that it was presented on January 25. This time the vote was 745 against joining the district and 527 in favor. Following the holding of the organizational meeting of Union High School District No. 31 on May 4, 1967, the plaintiffs, as residents and voters of Northfield, brought this action against the defendants, as directors and officers of the union high school district, to enjoin the further organization and operation of Union High School District No. 31. The chancellor, acting on agreed facts, found the union district validly organized and Northfield's attempted withdrawal a nullity. The plaintiffs bring the matter here.

[█] The defendants argue that resort to the general statute relating to reconsideration, 24 V.S.A. §704, was an inappropriate means to reverse the vote in favor of union high school district membership. There is a special statute in connection with union districts dealing with withdrawals. Pertinent here are 16 V.S.A. §662(a) and (d):

(a) A town school district or incorporated school district which is a member of a union high school district may vote to

withdraw from said union high school district if one year has elapsed since said union high school district has become a body politic and corporate as provided in section 612 of this title and if said union high school district has not voted to bond for construction and improvements as provided in section 642 of this title.

\*　　　\*　　　\*　　　\*

(d) A vote of withdrawal taken after a union high school district has become a body politic and corporate as provided in section 612 of this title but less than one year after said date shall be null and void. A vote of withdrawal from a union high school district taken after said union high school district has voted to bond itself for construction or improvements shall be null and void.

It is the rule that where two statutes may apply to a single circumstance, with conflicting consequences, the general statute must yield to the special. *Town of Bennington* v. *Vail,* 117 Vt. 395, 398, 92 A.2d 467; *State* v. *Elks Club of Montpelier,* 110 Vt. 397, 400, 8 A.2d 678.

In this case the union school district became a body politic on March 1, 1967, prior to either the vote of March 16, 1967, to reconsider, or the vote of April 25, 1967, opposing union. If the language of the special statute, 16 V.S.A. §662 governs, the attempted withdrawal is null and void.

The plaintiffs seek to avoid this consequence by contending that the filing of their petition for reconsideration acted as a stay, and rendered inoperative all of the subsequent procedures carried out to bring the union high school district into being. To support their position they must find authority to excuse the officials concerned from effectively carrying out their various mandatory duties establishing the union district as a body politic. All this must rest on implication, since there is nothing expressing it in the statutes. In fact, as already noted, the plaintiffs' claim must overcome plain language to the contrary.

This Court has always given liberal recognition to the right of reconsideration in local matters. *Garrett* v. *Fisher,* 116 Vt. 323, 327, 75 A.2d 674. However, the power of the legislature to impose limitations has also been fully acknowledged. *Denicore* v. *City of Burlington,* 116 Vt. 138, 143-144, 70 A.2d 582. In fact, the present restrictions on reconsideration now part of 24 V.S.A. §704 were put into

their present form by No. 65 of the Acts of 1951, passed following that decision.

■ The right of a town to reconsider its vote is further limited to situations where rights or interests of third persons have not intervened. *Garrett* v. *Fisher, supra,* 116 Vt. 323, 327, 75 A.2d 674; *Neill* v. *Ward,* 103 Vt. 117, 129-130, 153 A. 219. It is the peculiar nature of a union school district's beginnings that there are always other towns or districts simultaneously involved, whose rights, duties and obligations are likewise at stake. With such an intertwining of interests, the unrestricted application of the general right to reconsider may create an impossibly confused situation, even if that right is not completely blocked by the intervention of rights ripening in response to the action of one or more of the towns. *Cox* v. *Town of Mt. Tabor,* 41 Vt. 28, 31; *Rixford Mfg. Co.* v. *Town of Highgate,* 102 Vt. 1, 4, 144 A. 680. However, by the express provisions of 16 V.S.A. §662(a), previously quoted, the legislature has insured that there will be a way for an individual town district to take a second look at membership in a union district, but on conditions that avoid confusion and disorder.

■ The appropriateness of this view of legislative purpose is reenforced by the very specific requirements in 16 V.S.A. §612(a) that the meetings in all of the districts concerned be held on "the same day and during the same hours." Some purpose must be ascribed to this direction, so precisely expressed. The most obvious is that the towns are intended to vote independently, as far as possible uninfluenced by the outcome in other towns of the proposed union. It is hardly to be expected that the advantages which the legislature intended to attach to so deliberate a requirement would then be left to simple circumvention by resort to a petition for reconsideration. See *Denicore* v. *City of Burlington, supra,* 116 Vt. 138, 143, 70 A.2d 582. The chancellor correctly held that the attempt by Northfield to reconsider the favorable vote on the union high school question came under the proscription of 16 V.S.A. §662(d), and was, therefore, null and void.

The check list used at the special Northfield school district meeting was the check list of the 1966 annual town meeting, to which the board of civil authority had added one hundred fifty-five names, purporting to act pursuant to 17 V.S.A. §245. The plaintiffs claim these additions were illegal, and that the meeting was invalid as a consequence. The stipulated facts show that fifty-seven of these added voters actually cast ballots at the meeting.

A name or names improperly on an otherwise regular check list has never been held to invalidate a whole election. Even if those improperly listed cast votes, the election is still not forfeit. *State ex rel. Venner* v. *Zanleoni,* 97 Vt. 212, 216, 122 A. 495; *State ex rel. Cawley* v. *O'Hearn,* 58 Vt. 718, 721-722, 6 A. 606. The remedy is by challenge to the illegal votes. If the challenge is sufficient to change the result, the election is not set aside, but the result is corrected. *Burke* v. *Beecher,* 101 Vt. 441, 447-448, 144 A. 200. The plaintiffs have not specifically challenged any votes, but only argued the claimed invalidity of the entire election. However, even assuming all fifty-seven votes are void, they are not sufficient to change the result of the vote if they are all deducted from the majority vote of 488, since the opposing vote was 356. No invalidity in the election has been shown.

This is not to say that we agree with the plaintiffs that the additions to the check list were necessarily improper. Their argument, that the language of 17 V.S.A. §245 does not permit the putting of new names on the check list prior to a special election, overlooks an identity of language between section 245 and the preceding section, 244. 17 V.S.A. §245 reads:

At special town and village meetings, the check list used at the preceding annual meeting shall be used with such alterations as the board of civil authority may make, having given six days' notice of a hearing for revising such list.

In 17 V.S.A. §244 the scope of "a hearing to revise the check list" is set forth as follows:

At a hearing to revise the check list to be used in a town or village meeting, the board of civil authority shall hear and determine questions as to such list of voters, may examine upon oath persons claiming a right to vote, and shall insert upon the check list left in the town clerk's office the names of voters omitted, and erase therefrom the names of persons not entitled to vote.

In *Martin* v. *Fullam,* 90 Vt. 163, 169, 97 A. 442, 444, Judge, later Chief Justice, Watson reminds us that the denial of the voting privilege to one legally qualified may raise "the grave question whether his constitutional rights are not infringed." This Court will look to that justifiable construction of our laws that favor the enfranchisement of the qualified voter.

As a last point, the plaintiffs attack the May 4, 1967, organization meeting of the new union district because of claimed inconsistencies in the warnings. The place of meeting was in Northfield, and all of the warnings and public notices so stated. The time of the meeting was stated as "8:00 P.M., Daylight Saving Time" in the warnings posted in Berlin, Roxbury and Williamstown, and in the newspaper notices. But the warning posted in Northfield set the meeting time at "8:00 P.M., Eastern Standard Time." This had the effect of calling those people who followed the official Northfield warning, rather than the published notices or those posted in the other towns, to attend the meeting an hour late. Whether this in fact occurred does not appear, nor is there any evidence of any kind that anyone was misled to his prejudice.

The situation should be distinguished from *Sherwin* v. *Bugbee,* 16 Vt. 439, 444-445; same case 17 Vt. 337, 340. There, no time at all was set for the meeting. Here we are dealing with a supposed one-hour inconsistency, involving only the notice in the very place of meeting. This we deem, under the circumstances, to be a mere irregularity insufficient to void the meeting, especially in the absence of facts showing actual prejudice.

Further, it should be kept in mind that the meeting we are now concerned with was the organizational meeting for the union high school district. Even if a defect was present in this meeting, it would have no effect on the status of the union as a "body politic," achieved before this meeting was ever held. Moreover, the procedures of 24 V.S.A. §740 are available to the district for any necessary corrective purposes.

Although the chancellor correctly declared the rights of the parties, for some reason which does not appear, he failed to dissolve the injunction originally issued. We will do so here.

*Decree affirmed and injunction dissolved.*