## Town of Groton et al v. Union School District No. 21 et al

[ 241 A.2d 332 ]

February Term, 1968

Present:   Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed March 14, 1968

*Otterman & Allen* for the Plaintiffs.

*Reginald T. Abare,* Esq., for Union School District No. 21.

*Witter, Akley & Brown* and *Edward R. Zuccaro,* Esq., for Dorothy Stevens, Harry Rowe, Nellie White and Harold Dolson.

**Smith, J.** This is an appeal from a decree of the Caledonia County Court of Chancery dismissing the Plaintiff's Bill of Complaint and awarding cost to the defendant. No exception was taken to the Findings of Fact filed by the Chancellor and the only question presented here is whether the Decree is supported by the facts found. *Miller* v. *Miller,* 124 Vt. 76, 78, 197 A.2d 488.

The defendant Union School District No. 21 is a municipal corporation organized under the laws of the State of Vermont, and includes the area of the Town of Groton and the Town of Ryegate in Caledonia County, and the Town of Wells River in Orange County. On Nov. 3, 1964, the formation of this Union School District was duly approved by an affirmative vote in each of the three then existing school districts. Irene Johnson, one of the defendants in this cause, was duly elected clerk of the District.

On July 26, 1965, the clerk of the District posted warnings of a meeting of District No. 21 to consider the matter of bonding said District for the construction of a school building. The warning pro-

144

vided for the articles to be presented to be voted on by ballot. The customary voting places in each of the various towns represented in the District were used for voting on the proposed bond issue. The results were that while a majority of voters in both Groton and Ryegate voted against the bonding issue, in the Town of Wells River the majority in favor of the issuance of the bonds was great enough to overcome the adverse votes in the other two towns at these August 17, 1965 meetings.

On or about September 15, 1965, a petition with sufficient signatures was presented to the defendant school directors of District No. 21 requiring a special meeting of the Union District to consider the question of rescinding the bonding vote of August. Warnings were posted giving notice of a meeting to be held on October 11, 1965 to consider a recision of the bonding vote, but such meeting was warned to be held at the South Ryegate Fire House instead of at three different meeting places in various communities, as had been done previously. While the plaintiff selectmen notified the directors of District 21 that they considered the single polling place to be a hardship to voters, no change was made by the directors in the designation of a polling place.

The voting on the single question presented at such meeting, which was whether or not the previous bonding authorization should be rescinded, was by Australian ballot. A moderator was present but he did not invite a free discussion. The votes of the three towns were all commingled in the ballot box and the count revealed that 29 more votes had been cast against recision than in its favor.

Sought by the plaintiffs in this Chancery action is a setting aside of both the bonding and recision votes which took place August 17, 1965 and October 11, 1965, an injunction against the issuance of the bonds for school construction, and a resubmission of the question of bonding to the voters of the District.

The first question presented to us in the brief of the plaintiffs is "Should the voters of Union School District No. 21 have been provided with an opportunity for discussion at the meeting held August 17, 1965 when the question of bonding was considered and at the meeting held October 11, 1965, when the matter of rescinding the bonding vote was presented?"

■ No statutory authority has been cited to us by the plaintiffs in support of their claim that an opportunity for discussion should have

been provided at these meetings. Their contention seems to be based on the claim that because a moderator is required to be elected by a union high school district (16 V.S.A. Sec. 613 (b)), that an inviting of the traditional discussion of the New England town meeting is mandatory at a union high school district meeting, no matter for what purpose that meeting may be warned. But a moderator of a town meeting is under no duty or obligation to invite open discussion at such meetings. His duties are to "decide questions of order and make public declaration of votes passed." 24 V.S.A. Sec. 724. It is true, as plaintiffs assert, that the moderator of Union School District No. 21, at the meeting of August 17, 1965, could necessarily be present at only one of the three polling places on that day, and was present only at Ryegate. But if it had been essential, a moderator pro tem. could have been elected at the other two polling places. 16 V.S.A. Sec. 617. At the meeting in the South Ryegate Fire House on Oct. 11, 1965, the moderator of the District was present at the place of balloting during the entire voting day.

■ However, if the claims of the plaintiffs were justified that an opportunity for discussion was a necessity to establish the validity of either or both of these two meetings on bonding, both the findings of fact and the transcript establish the fact that no voter at either meeting sought such opportunity. Plaintiffs can hardly complain here of the denial of a claimed right which the record establishes was never denied them. See *Town of Exeter* v. *Kenick,* 104 N.H. 168, 181 A.2d 638, 641.

The findings of fact disclose that the voters of the three school districts had been given a full opportunity to discuss the pros and cons of forming a union school district before the organizational meeting which established Union School District No. 21. Both the meeting of August 17, 1965 and the meeting of October 11, 1965 were duly warned, with each warning stating the question to be decided, and with each warning also declaring that the question to be presented was to be decided by ballot, with the polling places open for such balloting between specified hours of the day.

■ In both meetings, under the warning, the right of the voter was to express his approval, or disapproval, of the question presented by marking his ballot at some time during the hours that the polling places were legally open. The use of the Australian ballot called for voting without discussion. An example of the same procedure is fol-

lowed in annual town meetings when, under 7 V.S.A. Sec 161, the warning calls for a vote on the issuance of liquor or beer licenses in each town, with such vote to be by ballot. We again note that plaintiffs have cited us no authority that voters must be provided with an opportunity for discussion before marking their ballots under the Australian ballot system, nor do we think any can be found. In fact, 24 V.S.A. Sec. 702 (b) providing that, by vote, a town may hold its annual meeting in the evening before the first Tuesday in March and at that time transact any business not involving voting by Australian ballot "or voting required by law to be by ballot," such section would seem to clearly indicate that no such discussion shall be had when questions are presented that call only for determination by ballot only. Plaintiffs take nothing by this exception.

The second question raised by plaintiffs' brief is "Was the Board of Directors of Union School District No. 21 justified in using the South Ryegate Fire House as a single voting place for the consideration of the question of recision on October 11, 1965, after having used the three voting locations on August 17, 1965 in the original bonding vote?"

■■ The duty of the board of directors of a union school district to designate polling places is set forth in 16 V.S.A. Sec. 625:

"Wherever a matter, including bond issues under chapter 47, subchapter 1 of Title 24 is to be determined by ballot or voting machine, the board of directors may designate polling places not to exceed one such in each member district."

The statute is permissive as to multiple voting places and not mandatory. Nothing in the above statute states that the number, or the location of polling places in a union school district, cannot be changed from the time of one meeting of the district to another. The Chancellor found that the size of the one polling place did not interfere with the orderly conduct of the meeting, and that there was no evidence that the single polling place created a hardship or affected the vote. These findings were not excepted to by the plaintiffs. But if support was needed for them, we would add that the record in the case shows that more votes were tabulated at the single polling place on October 11, 1965, than in the three separate polling places of the meeting in August of that year. Under the findings of fact we find that the board of directors of School District No. 21 acted legally in designating the

South Ryegate Fire House as a single voting place for the meeting of October 11, 1965.

The third and last question raised by the plaintiffs here is: "Was the conduct of the recision vote on October 11, 1965 sufficient to result in a legal determination of the question of recision in spite of the violation of various statutes designed to assure the purity of elections?"

■ The errors in election procedure here claimed by the plaintiffs were the presence of only four voting booths, when plaintiffs claim that under 17 V.S.A. Sec. 923, eleven should have been provided, as well as an absence of a guard rail that would prevent persons from approaching within six feet of the ballot boxes. 17 V.S.A. Sec. 923. Plaintiffs showed no prejudice resulted from such minor infractions of election procedure.

The Chancellor found only that "perhaps" some requirements of voting places had not been fully observed, but " that if there were any such violations they did not affect the vote in any way." We think the Chancellor was correct in this conclusion, quoting the words of Mr. Justice Barney in *Appelget and Elliott* v. *Baird,* 126 Vt. 503, 236 A.2d 671, recently decided, " This we deem under the circumstances, to be a mere irregularity, insufficient to void the meeting, especially in the absence of facts showing actual prejudice."

We agree with the finding of the Chancellor that the proceedings surrounding the organization and bonding for the formation of Union School District No. 21 were valid.

*The entry is "Decree Affirmed."*